GAGE v. MENCZER et al.

(Court of Civil Appeals of Texas. Dallas. Feb. 17, 1912.)

1. INFANTS (§ 58*)—CONTRACTS—RESCISSION.

A purchaser of corporate stock during his minority could, before attaining his majority, repudiate the transaction and recover the sum paid from his vendor and any other party to the transaction who received the fund.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 149–160; Dec. Dig. § 58.*]

2. INFANTS (§ 58*)—CONTRACT—RESCISSION—PROSECUTION OF SUIT.

The prosecution, after reaching majority, of a suit to cancel a contract entered into during minority, is an act of avoidance.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 149–160; Dec. Dig. § 58.*]

3. INFANTS (§ 58*)—CONTRACTS—DISAFFIRMANCE.

Transactions by an infant in relation to personal property may be disaffirmed as well before as after majority.

[Ed. Note.—For other cases, see Infants, Dec. Dig. § 58.*]

4. INFANTS (§ 58*)—CONTRACTS—RECOVERY OF MONEY PAID—PERSONS LIABLE.

Where an infant has purchased corporate stock, he may, on disaffirming the contract, recover the sum paid therefor of a bank to which the vendor has paid the money in payment of a debt, whether the bank knew of his minority at the time of the purchase of the stock or not.

[Ed. Note.—For other cases, see Infants, Cent. Dig. §§ 149–160; Dec. Dig. § 58.*]

Appeal from Dallas County Court; W. F. Whitehurst, Judge.

Action by Walter A. Gage against Edward A. Menczer and another. From a judgment for defendants, plaintiff appeals. Reversed and remanded.

Short & Feild, for appellant. Burgess, Burgess & Chrestman, for appellees.

TALBOT, J. This is an action brought by the appellant against the appellees to rescind and cancel the purchase of 10 shares of the capital stock of the Edward A. Menczer Machine Company, alleged to have been made by the plaintiff, Gage, of the defendant Edward A. Menczer, and to recover of both defendants, the said Edward A. Menczer and First State Bank of Dallas, the price paid by the plaintiff for said stock. The plaintiff alleges, in substance: That he was 20 years of age on the 28th day of May, 1907, and desired to secure employment. That by an advertisement in the papers he had learned that the Edward A. Menczer Machine Compa-

ny desired to secure the services of a young man of good moral character and sober habits to attend to its office work. That he applied to Edward A. Menczer for the position and offered to engage his services at a reasonable salary. That the said Edward A. Menczer was at the time the president of the Edward A. Menczer Machine Company, which had a capital stock of $10,000, the greater portion of which was at the time claimed by the said Edward A. Menczer. That the said Menczer informed plaintiff he could give him the position which he desired, and mentioned in the advertisement, but told the plaintiff he desired to sell a portion of the capital stock, and offered to sell the plaintiff 10 shares of said stock of the par value of $100 per share, and to engage his services at $75 per month and to elect him secretary and fix his salary as such at $75 per month, if plaintiff would purchase the 10 shares of stock at $100 per share. That said Menczer represented that said company was doing a profitable business, and that the shares of stock he offered to sell were worth $100 per share, the face value thereof. That said corporation owned property free from incumbrance of a larger value than $10,000, the sum for which it was capitalized, and that the business which it was doing would afford the salary of $75 per month in addition to other salaries and expenses incurred in conducting and carrying on its business. That said corporation kept its bank account with the defendant First State Bank of Dallas, and that W. D. Hume, the cashier thereof, knew the financial condition of the said Edward A. Menczer Machine Company, and that plaintiff could satisfy himself as to its solvency and the value of its capital stock by calling on him, the said W. D. Hume. That plaintiff is the stepson of D. L. Countryman. That the said Hume and his said stepfather are friends of long standing, and that, when plaintiff was referred to the said W. D. Hume by the said Edward A. Menczer to verify his statements of the financial standing and credit of the said Edward A. Menczer Machine Company, he repeated said reference to said D. L. Countryman. That plaintiff and said Countryman applied to the said Hume, and explained to him that plaintiff was a minor and had been offered employment by the Edward A. Menczer Machine Company on the condition that he would become the purchaser of 10 shares of the capital stock. That said stock had been represented by the said Edward A. Menczer to be worth $100 per share, and that they had been referred to him, the said Hume, for information as to its real value. That they inquired about the business of said corporation, and the property it owned and its financial standing and condition, and said Hume represented to them that the said Edward A. Menczer Machine Company was doing a prosperous business; that it had many or-

ders for work for large amounts, one of which was stated to be $2,500; that there were other orders for nearly that amount; that said Edward A. Menczer was in debt to the defendant First State Bank in the sum of $2,300; that he had been indebted for a much larger sum to said bank, but that said debt was due by installments of $200 a month, which had been promptly paid; that the financial condition of the said Edward A. Menczer had been greatly improved by his earnings from the business in which the said Edward A. Menczer Machine Company had been engaged; and that the stock in said company was valuable property and worth in the opinion of the said Hume the price asked for the same, to wit, $100 per share. That plaintiff believed said representations to be true, and that the said machine company was doing a profitable business and earning money, and that the said Edward A. Menczer had been able to reduce his indebtedness to said bank at the rate of $200 per month from the earnings of said company, and that his indebtedness to said bank amounted to only $2,300, as stated by the said Hume, cashier. That the said Countryman explained to the said Hume that plaintiff contemplated making the purchase of said 10 shares of stock at the sum of $1,000, and that Hume stated that $1,000 paid to the said Menczer and by him applied to the debt of $2,300 due said First State Bank would reduce said indebtedness to such a small amount that he (Menczer) could readily and easily discharge it in full and relieve himself from any pressing obligation. That, believing all said representations to be true, plaintiff purchased the said 10 shares of stock from the said Menczer and paid him therefor the sum of $1,000 in cash, which was by the said Menczer at the same time paid to the said First State Bank. That said Menczer, when said payment was made, represented that the Menczer Machine Company was not indebted in a sum to exceed $600, and that it owned property in excess of $10,000. That, after having had the favorable accounts of the business as related by the said Hume, the plaintiff believed said representations of Menczer to be true. That all these facts were repeated in the presence of Hume, who verified the same by saying that only Edward A. Menczer was personally indebted, and that no indebtedness existed against the said Menczer Machine Company, and that plaintiff was induced by all said representations to make the purchase of said stock. That said Menczer was, at the time plaintiff became the purchaser of said stock, indebted to the defendant First State Bank in about the sum of $4,000, and that he was indebted at the same time to his mother, Regina Menczer, in the sum of $1,000 by a promissory note which had been held and owned by the said defendant, First State Bank, and that he was also indebted to his mother in other

sums, aggregating $2,000. That said Menczer had purchased from I. H. Dillon the machinery, tools, fixtures, and other property which belonged, at the time the plaintiff became the purchaser of said stock, and at the time said representations were made to him about its value, to the Edward A. Menczer Machine Company. That, in making the purchase from said I. H. Dillon, the said Edward A. Menczer executed 32 promissory notes in the sum of $200 each, except the last of the notes to become due, which was in the sum of $300, aggregating in all the sum of $6,500. That, to secure the said Dillon in the payment of the same, the said Edward A. Menczer executed a chattel mortgage on all the property which he purchased from Dillon. That the last 26 notes of the series so secured were after the execution of the same by the said Edward A. Menczer to the said Dillon assigned and transferred by him, the said Dillon, to the defendant First State Bank of Dallas. That the said First State Bank of Dallas held said notes and mortgage to secure their payment when plaintiff became the purchaser of the shares of stock in the said Edward A. Menczer Machine Company, except five of said notes, which had been delivered by said bank to Regina Menczer, the mother of said Edward A. Menczer, who paid the sums due and owing by the same and took up and received said notes and became the owner thereof. That, upon the organization and establishment of the said Edward A. Menczer Machine Company, the said Edward A. Menczer sold and transferred all said property to said company for $10,000 of its capital stock. That there was no mortgage of record executed by the said Edward A. Menczer Machine Company at the time the plaintiff became the purchaser of the shares of stock therein, and that plaintiff had no knowledge of the existence of any mortgage upon the property of said company when he bought said shares. That the said Hume knew at the time he represented to the plaintiff that said Edward A. Menczer Machine Company was not in a sound financial and money making condition, that all the property which it owned was mortgaged to the said defendant, First State Bank, for every dollar it was worth, and knew that the mortgage had never been reduced to the sum of $2,300, which he said was owing from said Edward A. Menczer to the bank, of which he was the cashier, but concealed the existence of said mortgage from the plaintiff, intending thereby to induce plaintiff to become the purchaser of the shares of stock at the sum of $1,000, knowing that his bank would receive the entire payment to be applied upon the debts of the said Edward A. Menczer in case plaintiff became the purchaser of said shares and paid said sum to said Menczer, and that the existence of said mortgage and the real amount of said Menczer's indebtedness to said bank was concealed and misrepresented by the said W. D. Hume for the purpose of influencing the plaintiff to make said payment and to become the purchaser of said stock. That had he known said mortgage was in existence, or if he had known that said payments had not been made to the bank by said Edward A. Menczer, as represented by the said Hume, or if he had known that said Edward A. Mencer Machine Company was insolvent, that all of its property and effects were incumbered for every dollar which they were reasonably worth, as was the fact when plaintiff became the purchaser of said shares, he would never have made any purchase thereof, all of which the said Hume well knew, and which he concealed from the plaintiff for the purpose of injuring him and inducing him to become the purchaser of said shares, in order that his bank might profit to the extent of the $1,000 to be paid therefor. That said Edward A. Menczer Machine Company was in fact insolvent and bankrupt at the time the plaintiff purchased said shares,. all of which was well known to the defendant W. D. Hume. That the said Menczer had not paid $200 per month on his indebtedness to said bank, but that the notes aggregating said sum per month had been taken up by Regina Menczer, his mother, and no part of said sum had been earned by the said Edward A. Menczer Machine Company, all of which the said Hume well knew when he represented that said sums. had been paid out of the earnings of said company. That' plaintiff was a minor when said purchase was made, and, not having attained his majority, sued by his next friend at the beginning of this action. That on the 13th day of January, 1908, after learning he had been swindled by the defendants Edward A. Menczer and First State Bank, he tendered to said Menczer a return of the shares of stock which had been transferred to him in consideration of the said sum of $1,000 paid for the same, and demanded of the said Menczer the repayment of said sum, but that the said Menczer was penniless, and the company of which he was president was bankrupt. That the defendant First State Bank received said sum paid by plaintiff to the said Menczer for said stock, and applied the same as a credit on Edward A. Menczer's debt, and assisted the said Menczer in perpetrating the fraud, and received all the profit realized from the same. That plaintiff now brings said stock into court and tenders it to said defendants. Plaintiff prayed that the sale of said stock be canceled, that he recover of the defendants the sum of $1,000, and for such other and further relief as seemed just and proper. No service was had on the defendant Edward A. Menczer, and the case was dismissed as to him. The defendant the First State Bank of Dallas answered by general and special demurrers and by general denial

and special answer, which need not be stated. The general and special demurrers were by the court sustained, and, the plaintiff declining to amend, the cause was dismissed, and he appealed.

[1] The first assignment of error complains of the court's action in sustaining the bank's general demurrer to plaintiff's petition. The propositions presented under this assignment are: "(1) The appellant, being under 21 years of age at the time he purchased the shares of stock from Edward A. Menczer in the Edward A. Menczer Machine Company, could, before attaining his majority, repudiate the transaction and recover the sum which he has paid from his vendor, and any other party to the transaction who received the fund. (2) Where one person assists another with means of committing a fraud upon a third person, and a fraud is perpetrated as the result of such assistance, he is liable."

The first of these propositions should, in our opinion, be sustained. The question as to whether contracts made by infants are void or only voidable has given rise to much discussion, and the decisions do not seem to be entirely harmonious on the subject. It has been held that where an infant's contract is to his benefit, as in the case of contracts for necessaries, it is binding upon him; that when it is to his prejudice it is void; and when it is of an uncertain nature as to benefit or prejudice it is voidable only at the election of the infant. The tendency of modern decisions, however, seems to be in favor of the rule that such contracts should be deemed voidable only and subject to the election of the infant. But in determining the proper disposition to make of this appeal it is immaterial whether the sale and purchase of the stock in question was void or merely voidable, or whether or not the plaintiff had the right to disaffirm the contract of purchase of the shares of stock in question before his arrival at majority.

[2] The prosecution of this suit by the plaintiff after he reached majority was and is an act of avoidance. McCarty v. Woodstock Iron Co., 92 Ala. 463, 8 South. 417, 12 L. R. A. 136; 22 Cyc. p. 555.

[3] The rule, however, is well established that, as to transactions by an infant in relation to personal property, the disaffirmance thereof may be effected as well before as after majority. Cummings v. Powell, 8 Tex. 80; McCarthy v. Nicrosi, 72 Ala. 332, 47 Am. Rep. 418; Shipman v. Horton, 17 Conn. 481; Rice v. Boyer, 108 Ind. 472, 9 N. E. 420, 58 Am. Rep. 53; Bradford v. French, 110 Mass. 365. The allegations of plaintiff's petition are sufficient to show that, while he was yet a minor, he sought a rescission of his contract of purchase of the stock obtained from Menczer and offered to return said stock; that W. D. Hume, the appellee's cashier, knew he was a minor pending the negotiations, which resulted in the purchase of the stock, and assisted in bringing about said purchase with the view of securing for the benefit of appellee the money paid for said stock; that the appellee bank received the said sum of money and applied the same as a credit on the debt due by the said Menczer to it, and received all the profit and benefit realized from said transaction; that plaintiff while a minor brought this action by next friend, but after attaining majority amended his petition and prosecuted the suit in his own name; that plaintiff brought the shares of stock into court and tendered them to the defendants. These allegations show a prompt disaffirmance of the transaction in question on the part of the minor, and an offer to restore the stock received by him. And that plaintiff showed a clear right to recover a judgment against Menczer for the amount of the money paid for said stock cannot be, and is not, denied by appellee.

[4] Appellee contends, however, that no such right is shown against it. In this contention we do not concur. The repudiation of the purchase of the stock nullified it and rendered it void ab initio, and the parties to the contract were thereby returned to the same condition as if the contract had never been made. This being true, appellee, according to the allegations of appellant's petition, occupies the position of having received and applied to its own use and benefit $1,000 of appellant's money, to which it can set up no legal claim whatsoever. The petition showing a disaffirmance by appellant of the purchase of the stock, and the legal effect thereof being to nullify and render void such purchase from its inception, no legal claim on the part of appellee to the money given as a consideration therefor can be based on the fact that it received said money in payment of a debt due by Menczer to it. This seems to be the law whether appellee knew or did not know that appellant was a minor at the time he purchased the stock from Menczer, for it is held that the right of a grantor to disaffirm his deed made during infancy and to recover the land conveyed therein is not lost because of the fact that the grantee conveyed to a bona fide purchaser for value without notice. The doctrine rests upon the principle that the right of the infant to avoid his contracts is an absolute and paramount right, superior to all equities of other persons. Searcy v. Hunter, 81 Tex. 644, 17 S. W. 372, 26 Am. St. Rep. 837; Brantley v. Wolf, 60 Miss. 420; Harrod v. Myers, 21 Ark. 592, 76 Am. Dec. 409; Buchanan v. Hubbard, 96 Ind. 1; Jenkins v. Jenkins, 12 Iowa, 195. In the case of Searcy v. Hunter, supra, the contention was made that, when the grantee of the minor sells the land for value to a purchaser in good faith, the right of disaffirmance is lost, and in holding against this contention the Supreme Court said: "Such a doctrine would enable the grantee to make the deed valid by a mere sale to an innocent purchaser,

and would practically destroy a rule established to protect minors against the consequences of improvident conveyances of their property." If the right to a disaffirmance and recovery of the property is not lost when the transaction affects realty and the property has passed from the grantee of the minor to an innocent purchaser for value and without notice, we can see no good or rational reason why a disaffirmance and recovery should be denied when the transaction relates to personal property and the same has passed from the original purchaser or holder thereof into the hands of one who had no notice of the vendor's minority. In the case at bar, however, the allegations of the plaintiff's petition are sufficient to show that the appellee, through its cashier, had notice, when it received and appropriated to its own use the money paid by appellant to Menczer for the stock, that appellant was, at the time he purchased the stock, a minor.

It follows, from what has been said, that, without regard to appellant's second proposition, the judgment of the court below should, in our opinion, be reversed and cause remanded. Therefore it becomes unnecessary for us to decide whether or not the allegations of appellant's petition show a cause of action against the appellee upon the theory that its cashier and Menczer acting together perpetrated a fraud upon the appellant in the sale of stock to him. Neither of the special exceptions sustained by the trial court was leveled at the allegations which we hold were not obnoxious to the general demurrer, and they need not be discussed.

The judgment is reversed, and the cause remanded.