MISSOURI, K. & T. RY. CO. OF TEXAS v. A. E. WANT & CO.  (No. 8234.)

(Court of Civil Appeals of Texas. Ft. Worth. June 26, 1915. Rehearing Denied Oct. 15, 1915.)

1. CARRIERS ⊂⇒32—CHARGES—REBATES.

An agreement of the agent of a railway company transporting goods for the plaintiff, upon discovery that the goods are in a defective condition on delivery, to reimburse the plaintiff for damages suffered by reason of deterioration of goods, is not an agreement for a rebate, sufficient to make it discriminatory within the interstate commerce law, nor does the fact that proof of the amount of damage is to be determined by plaintiff's agents alter the situation in that respect.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 83–85; Dec. Dig. ⊂⇒32.]

2. EVIDENCE ⊂⇒130— ADMISSIBILITY — LETTERS.

It is not error to exclude from the evidence a letter written to defendant by defendant's agent in regard to plaintiff's claim for damages, for the letter is res inter alios acta, particularly where the letter itself does not rebut the evidence to which it is directed.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 403; Dec. Dig. ⊂⇒130.]

3. CARRIERS ⊂⇒69 — INJURY TO GOODS — AGENTS—IMPLIED AUTHORITY.

Evidence, in an action for damages for deterioration of goods shipped, held to warrant submission of the issue as to whether defendant's agent, who assumed to compromise a claim, had been held out to shippers and consignees as having authority to do so.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 217–219, 222, 228, 230, 232–239; Dec. Dig. ⊂⇒69.]

Appeal from Tarrant County Court; Leon B. Fant, Judge.

Action by A. E. Want & Co. against the Missouri, Kansas & Texas Railway Company of Texas. From a judgment for the plaintiff, the defendant appeals. Affirmed.

Thompson & Barwise and George Thompson, Jr., all of Ft. Worth, for appellant. Baskin, Dodge & Eastus, of Ft. Worth, for appellee.

BUCK, J. From a judgment in the sum of $155.87 in favor of plaintiff, A. E. Want & Co., the defendant railway company appeals.

Plaintiff sued defendant, alleging: That during the month of January, 1912, there was consigned to plaintiff at Ft. Worth, Tex., by D. E. Ryan Company of Minneapolis, Minn., a certain car of potatoes. That upon its arrival plaintiff became aware that the potatoes therein, or a portion thereof, were frozen and unmarketable, and refused to accept the shipment. That, in order to save the defendant the trouble and expense of handling said damaged potatoes, the defendant and its agents agreed with plaintiff that, if it would receive said shipment, the defendant company would pay all loss and damage on account of the condition of the potatoes, and directed the plaintiff to unload and assort the same, and promised when this was done, and the extent of the loss ascertained, the defendant company would pay to plaintiff the amount thereof. That said shipment was made with bill of lading attached, all of which was known to defendant and its agents, and that the contract contemplated that plaintiff should pay the attached draft and receive the potatoes, and that it was induced to so accept and pay for said shipment by the promises made by defendant. It was alleged that the loss amounted to $155.87.

Defendant denied: (1) That any such promise was made by it as claimed by plaintiff; (2) that if it was made, the agent who made it had authority to bind the defendant, or (3) that the defendant had held out such agent as having such authority; (4) that though the promise was made, and though the agent had the authority to make it, or had been held out by defendant as having such authority, yet the promise and agreement was in violation of the federal statutes of February 19, 1903, and amended in 1906, prohibiting concessions, rebates, and discriminations as to freight rates and charges on interstate shipments, and therefore was not enforceable.

The evidence showed: That, upon the arrival of the shipment at Ft. Worth, the car was placed on plaintiff's house track, and that F. A. Jackson, agent and receiving clerk and warehouse foreman for plaintiff, looked at the potatoes and discovered their frosted and damaged condition, and called up the defendant's local freight office, and, asking for the claim clerk, reported the matter to him, and requested that some one from defendant's office come down and examine the potatoes, and advise plaintiff what should be done. That W. N. Baker, defendant's claim clerk or investigator under C. D. Rowe, local agent, in response to Mr. Jackson's request came to where the car was and saw the potatoes, and instructed Jackson "to go ahead and run this car of potatoes and let him know what the damage was, and he would protect us (plaintiff) on it." It was shown that Baker told Jackson "to handle the potatoes for the account of the M. K. & T. of Texas." Baker testified that he instructed Jackson to go ahead and handle the potatoes on account of the defendant, but that he did not promise that the railway company would pay for any loss sustained, but merely that "we would give it prompt handling and it would be handled and settled on its merits."

The evidence showed that both Rowe and Baker had many times prior thereto made settlements for damages claimed to shipments, without referring the claims to headquarters at Dallas; but both Messrs. Rowe and Baker testified that such a course was permitted under the rules of the defendant company only when the amount of the claim was less than $100; that larger claims had to be referred to the Dallas office. In this instance, the evidence shows that the claim was referred to the Dallas office by Baker, but for some unexplained reason was not paid, though nearly three years had elapsed between the origin of the claim and the judgment in the trial court.

The first assignment is directed to the failure of the trial court to give defendant's special requested peremptory instruction, which appellant urges was error, for the following reasons set forth in its statement under said assignment:

"The uncontradicted evidence, and the weight of the evidence in the case, showing that contracts such as the one alleged by the plaintiff were not made by the various railroads in the city of Ft. Worth at that time, and further showing that there was no general custom or practice on the part of the railway companies in Ft. Worth, in existence at the time, whereby they would make such contracts or extend such privileges to shippers in Ft. Worth, or to parties to be notified of the arrival of shipments in the city of Ft. Worth, as was alleged by the plaintiff in its petition, and these facts being true, the alleged contract upon which plaintiff bases its suit was and is wholly discriminatory and conferred a privilege upon the said A. E. Want & Co. which was not conferred upon other shippers and parties to be notified of the arrival of shipments in the city of Ft. Worth, and was therefore unlawful, invalid, and not binding upon this defendant.

"The plaintiff having sued upon a breach of the alleged contract, and nowhere in its petition alleging that the said railway company was guilty of negligence in the handling of said shipment, but wholly relied upon the breach of said contract as alleged, the defendant, under the evidence and the facts adduced during the trial of the case, is clearly entitled to a peremptory instruction and the submission to the jury of its said special charge, No. 1."

[1] We do not think the agreement by Baker, acting for defendant company, to pay for the damaged potatoes, can reasonably be construed as being in the nature of a contract discriminating in favor of the plaintiff with reference to freight rates or charges. It was an acknowledgment of liability, the extent of which was to be determined by an examination of the potatoes, and sorting the damaged ones from the uninjured. The fact that this proof of the amount of the damages was to be made by plaintiff's agents and employés would not alter the character of said agreement or transaction. The separation of the good from the bad, and the ascertainment of the extent of the loss, was to be made "on the account of" defendant company, as testified to by Baker himself, and through the medium of his own selection. There is no pleading or proof to support the conclusion that the loss really suffered by plaintiff was not in the amount of the claim, or that the confidence Baker showed in the fairness and carefulness of plaintiff's employés was misplaced. The plaintiff pleaded an agreement of compromise and settlement, and we think the evidence amply sustains such plea. We do not think the arguments urged to the effect, or the cited authorities holding, that where a contract between shipper and carrier contains a provision that grants to the shipper a special privilege or advantage, are in point. Therefore, we overrule the first assignment, and likewise the second, which complains of the failure of the trial court to enter judgment for defendant company.

[2] We do not think the court erred in refusing to admit the letter written by Baker, for Rowe, March 7, 1912, to the Dallas office, with reference to this claim, and we hold that the objection of plaintiff to its introduction that it was res inter alios acta, irrelevant, and immaterial, was properly sustained. Moreover, if said letter could be held under any construction to be admissible, we cannot see how its exclusion could have injured appellant. The only reason assigned in support of its admissibility is that it tends to show that Baker had not recommended therein the payment of the claim and it was therefore in rebuttal of the testimony of Wardlaw, plaintiff's credit man, wherein he stated:

"I talked with Mr. Baker about this particular claim after some little time had elapsed, and he stated to me that he had made the agreement to pay this amount of money to protect us on this claim."

And later, having been recalled:

"I had a conversation with Mr. Baker subsequent to the occasion of Want & Co. receiving this shipment regarding the damage, claimed on the shipment, which conversation was over the phone. I had a second conversation with Mr. Baker, but I am not positive about it; I think I spoke to him about this claim, in connection with Mr. Williams, when he was in our office one day talking about it. I possibly had a third conversation with him, and it was one of the ones over the phone. In the phone conversation, I recognized Mr. Baker as the party to whom I was talking. Mr. Williams had called my attention to the length of time the claim had been out, and that it had not been paid, and I remember the circumstances so clearly that I called Mr. Baker up and asked why it had not been paid, and he expressed surprise that it had not been paid, and went on and stated that he had put the claim up in the proper way, and would take it up again with the Dallas office and see that we did get paid, and that he thought the claim was a just one, and he expressed surprise that it had not been paid, and first he stated that it had been paid, and when I showed him that it had not, he said he would take it up right away. I cannot remember the second conversation, but this was the first time I talked to him, and the second time, I don't know whether I talked over the phone, but I rather think I did, and he came over there to see Mr. Williams —our desks are right near each other, and he was in the office talking about this claim, probably over there investigating some other claim at the time. He did not say anything to me with reference to his having agreed that they would protect Want & Co. on the claim. In substance, he stated that he had put the claim up in the proper way, and that he expected it to be paid, and was surprised that it had not been paid."

There is nothing in this letter which would render it even improbable that Baker did make the statements attributed to him by Wardlaw. The third assignment is overruled.

[3] We think the evidence justified the submission of issue No. 4, which reads as follows:

"Had the defendant railway company held out its agent, Baker, to the shippers and consignees as having authority to enter into such agreement as alleged by plaintiff?"

F. A. Jackson testified:

"From my experience up to that time, Mr. Baker, whenever anything was wrong there and I showed it to him, and he said, 'You go ahead and find out the damage and we will pay for it,' and in a few days later he would send a check to cover it."

Mr. Wardlaw, upon this point, testified in part as follows:

"It is customary with Mr. Baker and with any of the railroad companies who make any notations of shortage on examining the shipment, we go ahead and file the claim, and nothing more is heard from it; the claim is paid in a short while. All the agreements heretofore made with Mr. Baker about those claims on the occasion when Baker would come over and make notations on the expense bills were carried out; every one except this one."

Mr. Baker testified:

"I told Mr. Jackson to go ahead and handle the potatoes for the account of the M. K. & T. Ry. Co. of Texas as a matter of adjustment between the railroad and the consignees. That was my customary way of dealing with matters like that when I was called to inspect a shipment. By that I meant that Jackson, on behalf of his company, should handle these potatoes just like the railroad company would handle them if Want & Co. had not received them. I had done that previously in several shipments with Want & Co. which they had called me over to inspect. * * * It was my customary way of handling business in that position."

C. D. Rowe testified:

"I knew prior to this time that he (Baker) had been calling at A. E. Want & Co.'s establishment to inspect damaged shipments, and had requested them to handle the shipments for the railroad company. * * * When they are handling a shipment for our account, I would not expect that they would lose by the transaction—not be out any money."

Therefore, the fourth assignment is overruled, and also the fifth, which objects to the submission of issue No. 3, to wit:

"Had the witness Baker, prior to the transaction involved in this cause, made similar agreements to the one alleged by plaintiff to have been made, and which agreements were carried out by the defendant railway company?"

The sixth and last assignment directed to the action of the trial court in overruling defendant's motion to set aside the findings of the jury is overruled.

Judgment affirmed.