**JONES et al. v. TEAT et al.**
No. 4287.

Court of Civil Appeals of Texas. Texarkana.
Feb. 10, 1933.

Rehearing Denied Feb. 23, 1933.

618

W. H. Sanford and Conan Cantwell, both of Longview, for appellants.

C. F. Richards, of Lockhart, Banks & McLemore, of Longview, and E. A. Camp, of Rockdale, for appellees.

LEVY, Justice (after stating the case as above).

The contention of the appellants Dean and Adkisson should, it is believed, be sustained that the agreement of sale and absolute deed to an interest in the oil royalty made to them by Lafayette Jones after the removal by judicial decree of the contractual disabilities which nonage entails constitutes disaffirmance of the deed to the interest in the oil royalty made by Lafayette Jones during his infancy to A. H. Teat.

It affirmatively appears from the evidence that A. H. Teat made acceptance of the title to the oil royalty conveyed to him by Lafayette Jones by the deed of date March 9, 1931, through the act of filing the deed on March 11, 1931, for registration in the office of the county clerk. As a legal consequence of the acceptance of the title to the oil royalty conveyed, the draft which had been delivered to and accepted by Lafayette Jones "payable on the approval and acceptance of title" became immediately payable and negotiable and a binding obligation upon A. H. Teat. A. H. Teat could not thereafter demand the return of nor recall the draft signed

and delivered by him, although it was not actually paid on the date of March 12, 1931. Lafayette Jones, when the draft was returned unpaid on March 12, 1931, did not himself return or offer to return such draft to A. H. Teat nor direct the First National Bank of Fort Worth, his collecting agent, to do so. On the contrary, it affirmatively appears that Lafayette Jones retained and continued to hold the draft after March 12, 1931, with the collecting bank, and directed its return for another effort at its collection from A. H. Teat through the First National Bank of Longview. All these acts stated above occurred during the period of time that Lafayette Jones was a minor, as affirmatively appeared he was, and before the date of the judicial decree of removal of his disabilities as a minor. Lafayette Jones, however, on March 25, 1931, and after the date of the entry of the final decree of the removal of his disabilities as a minor, made, in point of undisputed fact, a formal executory agreement as to lease of the land for oil production and of absolute sale of a portion of the oil royalty to Dean and Adkisson. There was deposited in escrow an absolute deed to an undivided one-half of his interest in the one-eighth of the oil royalty executed and acknowledged by Lafayette Jones and his wife and dated March 25, 1931. This deed was delivered to appellant Adkisson and by him filed for record in the office of the county clerk on April 30, 1931. The purchase money provided for in escrow was on April 29, 1931, paid over to and received and kept by Lafayette Jones. Dean and Adkisson had full actual notice at the time of the execution of the agreement and of the deed of the sale and conveyance to A. H. Teat.

The removal on March 24, 1931, by judicial decree of the contractual disabilities which nonage entails fully invested Lafayette Jones with the power and capacity and subjected him to all the obligations which he would have or be subjected to if he had actually reached the age of 21 years. Article 5921, R. S.; Brown v. Wheelock, 75 Tex. 385, 12 S. W. 111, 841. Immediately upon being placed in the status of a person of full age and with legal capacity to act as a free agent, as is the legal effect of the judicial decree, Lafayette Jones made a sale and deed of absolute conveyance of a portion of the oil royalty interest to Dean and Adkisson, who were third persons not in privity of relation in any wise of the first grantee, A. H. Teat. The instrument conveying the fixed interest of one-sixteenth of the oil royalty interest is inconsistent with the former instrument conveying a fixed interest of one-eighth in the same royalty interest. If the conveyance of the entire one-eighth interest must stand, the conveyance of the one-sixteenth interest could not stand. The last conveyance of necessity destroys the force and effect of the first con-veyance so far as to make it not possible for the two to stand together and both be given effect according to their terms. The absolute sale and conveyance of the same land or interest in land to a third person, not within privity of relation with the first-grantee, is a well-recognized method, and the settled doctrine in this state, of giving expression to an unequivocal intent of disaffirmance of an infant's conveyance. Searcy v. Hunter, 81 Tex. 644, 17 S. W. 372, 26 Am. St. Rep. 837; 1 Elliott on Contracts, § 345, p. 560; 31 C. J. § 70, p. 1020, § 80, p. 1026. The effect and result of the disaffirmance of a conveyance of land entered into during infancy annuls and renders it thereafter void on both sides ab initio. 23 Tex. Jur. § 48, p. 742; 1 Elliott on Contracts, § 352, p. 569; 31 C. J. § 167, p. 1071; Gage v. Menczer (Tex. Civ. App.) 144 S. W. 717. The parties are in the same status in which they would have been if the contract had not been made. As a valid disaffirmance cannot be retracted without the assent of the other party, it follows that the deed to Dean and Adkisson is effectual and must prevail in this case. As noted by the cases above cited, and declared in other cases, whether the deed amounts to a disaffirmance becomes a question, not for determination by the jury, but, of pure law for the determination of the court. Peterson v. Laik, 24 Mo. 541, 69 Am. Dec. 441, and other cases.

The appellees urge that it should be deemed conclusively established in this record that Lafayette Jones was over 21 years old at and before March 9, 1931, the beginning of this controversy. That contention is based upon the recitals in a certain judgment of the district court rendered on October 22, 1931, in an action in trespass to try title to mineral interests in a certain tract of land. Neither the parties nor the mineral interest was the same as now in controversy. The judgment in that case adjudged title to the property in suit to the plaintiff against Lafayette Jones and another defendant claiming under Lafayette Jones. It appears in that case that Lafayette Jones pleaded minority at the date the deed was made. The judgment sets out the answer of the jury upon the only special issue submitted in that case, which answer was that "Lafayette Jones was twenty-one years old at the date of the deed to the plaintiff." Under the well-settled rules, that judgment cannot be introduced in evidence to establish the facts on which it was rendered. Neither can that judgment, it is concluded, be made to constitute an estoppel in the present suit. The judgment in legal effect was purely a judgment in personam and not in rem. A judgment in personam differs from a judgment in rem in that a judgment in rem is a solemn declaration of the status of some person or thing. As by way of analogy, a judgment of naturalization is a judgment in rem establishing the status of the person

naturalized to be that of a citizen of the United States. Such judgment in rem may be offered in evidence as establishing the status of a person. Some of the cases cited by the appellees involves judgment in rem. It is further claimed by the appellees that estoppel may be predicated by A. H. Teat upon misstatement by Lafayette Jones as to his age at the time the agreement of the sale was entered into. Although there may be some evidence to show that Lafayette Jones stated to A. H. Teat that he was 21 years old, and that A. H. Teat relied upon such statement, yet it is beyond question in the record that A. H. Teat had knowledge that Lafayette Jones was in fact a minor and was so claiming and had his disabilities removed by judicial decree before A. H. Teat paid the draft given for the purchase money and before A. H. Teat conveyed the property to W. W. Hawkins.

It is further urged by the appellees that, although the disaffirmance might be deemed valid and effectual to vest in Dean and Adkisson title to the one-sixteenth portion of the oil royalty interest conveyed to them, yet, in view of the attending circumstances, the appellee A. H. Teat and his vendee, H. H. Coffield, have remedy and rights that may consistently stand and be urged in and to the remaining undivided one-half of the one-eighth oil royalty against Lafayette Jones. After the decree removing the disabilities of minority of Lafayette Jones and after the agreement of sale to Dean and Adkisson, the following transaction occurred: That A. H. Teat paid the draft signed by him and the money so collected was remitted to the Fort Worth bank. That the Fort Worth bank promptly issued its cashier's check for the amount of the remittance and delivered that cashier's check to Lafayette Jones, who indorsed his name on the back of the check and deposited it with the Fort Worth bank. Lafayette Jones admits his indorsement of the cashier's check and does not deny that he knew that A. H. Teat had remitted that sum of money to the bank on the returned draft on the Longview bank and that the money was to be paid to him. The only reasonable conclusion in the evidence, and it hardly admits of doubt, is that the money represented by the cashier's check was received and placed by Lafayette Jones to his credit in his regular checking account in the Fort Worth bank; that Lafayette Jones knew at the time that the money was remitted by A. H. Teat in payment of the purchase price of the royalty interest previously deeded to him. If Lafayette Jones did not so know, he was culpably negligent in failing to acquire the knowledge. In receiving and appropriating the delayed remittance for the payment of the purchase price of the royalty interest, Lafayette Jones evidently intended to ratify and to acquiesce and to withdraw avoidance of the transaction in part and at least as far as concerns the interest in the royalty remaining vested in him at the time after deducting the one-sixteenth interest passed by conveyance to Dean and Adkisson. If such was not the reasonable import of the act of accepting the delayed payment, then for what purpose did Lafayette Jones take and appropriate the purchase price of the oil royalty? Certainly, in the circumstances, an intention to commit a fraud upon A. H. Teat by taking and accepting the delayed payment could not be imputed to Lafayette Jones. In the circumstances, estoppel, it is concluded, would operate and be applicable against Lafayette Jones from asserting avoidance or invalidity of right and interest of A. H. Teat, and his vendee, H. H. Coffield, in so far and to the extent of the one-sixteenth interest in the oil royalty remaining in excess of the one-sixteenth interest passed to Dean and Adkisson.

The judgment of the district court is reversed and here rendered in favor of Dean and Adkisson against H. H. Coffield for the one-sixteenth interest in the oil royalty conveyed to them by Lafayette Jones, and in favor of H. H. Coffield against Lafayette Jones as to one-sixteenth interest in the oil royalty; that judgment be rendered in favor of H. H. Coffield against A. H. Teat as his warrantor in title in the sum of $650, being one-half the price of the oil royalty conveyed; that the judgment of the trial court as to Lafayette Jones be in all things affirmed. All the costs of the trial court incurred by Dean and Adkisson and one-half the costs of appeal will be taxed against H. H. Coffield, and all the remaining costs of the trial court and one-half the costs of the appeal will be taxed jointly and severally against A. H. Teat and Lafayette Jones.