Jefferson DAVIS, Appellant,

v.

ZAPATA PETROLEUM CORPORATION, Appellee.

No. 5475.

Court of Civil Appeals of Texas.

El Paso.

Oct. 25, 1961.

Rehearing Denied Dec. 6, 1961.

Perkins, Bezoni, Kirwan & McWhorter, Midland, for appellant.

W. B. Browder, Jr., Stubbeman, McRae, Sealy & Laughlin, Midland, for appellee.

LANGDON, Chief Justice.

This is a suit brought by appellant, Jefferson Davis, against Zapata Petroleum Corporation, appellee, for damages resulting from the loss of an oil, gas and mineral lease by reason of the alleged breach of a letter agreement dated January 7, 1958, between appellee, Zapata Petroleum Corporation, and Harry Adams, acting therein for himself and his three associates, L. H. Tyson, Dr. G. T. Hall, and the appellant, Davis.

Appellant and his three associates were the owners of an oil, gas and mineral lease covering 3840 acres of land in Martin County.· By the terms of a "farmout" letter dated January 7, 1958, appellant and his associates agreed to assign a portion of such lease to Zapata, and Zapata agreed to commence drilling operations on the assigned premises with either a cable tool or a rotary rig, on or before February 1, 1958, and thereafter, with due diligence and in a workmanlike manner, continue its development operations upon the assigned premises until: (a) such operations resulted in production; or (b), 30 days after giving notice of its intention to abandon such operations. Pursuant to the terms of the farmout letter, the assignment was placed in escrow, and Zapata timely commenced drilling operations on the assigned premises with the use of a cable tool rig; but later gave notice, as provided by paragraph II–(b) of the farmout letter, that it desired to abandon operations on the lease.

The oil and gas lease involved in this controversy was executed and delivered on February 4, 1948. It provided for a primary term of ten years, which expired on February 4, 1958; however, the lease contained a provision (paragraph 5 thereof) for extending the lease beyond the primary term. The pertinent part of paragraph 5 is set out as follows:

"* * * If at the expiration of the primary term oil, gas or other mineral is not being produced on said land, but Lessee is then engaged in drilling or reworking operations thereon, the lease shall remain in force so long as operations are prosecuted with no cessation of more than thirty (30) consecutive days, * * *."

Zapata commenced its operations on the lease under the farmout agreement just three days before the expiration of the primary term of the lease. Notice of its intention to cease such operations was communicated to appellant Davis and his associates by letter dated March 14, 1958. Following receipt of such notice, appellant Davis and his associates drew down the assignment previously placed in escrow, and made a new trade with Mr. J. C. Barnes to take over the operations on the lease.· Pursuant to the new agreement, Barnes moved on the lease with a big rotary rig, preparatory to re-entering and attempting to complete an old well identified in the record as the Callery & Hurt Well, previously drilled to a depth of 11,500 feet by others (not parties to this suit) and abandoned as a dry hole. Appellant Davis contends that, after having made the trade with Barnes, and after Barnes had moved on the lease with the big rotary rig for the purpose of continuing operations thereon, they were compelled to move off the lease and terminate all operations by reason of the prior termination of the lease due to the failure of Zapata

to commence its operations on the assigned premises in good faith, and its failure thereafter to continue its operations in good faith and with due diligence as it was obligated to do under the terms and conditions of the farmout agreement, causing appellant Davis to suffer the damages complained.

Prior to the institution of this suit, appellant Davis filed a suit in the district court of Martin County against E. T. Strain, Waddell Strain, Louisiana Land and Exploration Company, and Earl B. Powell and wife, Jane B. Powell, as owners of the minerals in the land covered by the oil and gas lease which was the subject of the farmout agreement involved here. The suit was No. 2124 on the docket of the District Court of Martin County, styled Jefferson Davis, Plaintiff, vs. E. T. Strain, et al, Defendants. By such suit Davis sought to obtain a decree in the nature of a declaratory judgment, decreeing the lease in question to be a valid, subsisting lease in full force and effect, or, in the alternative, damages for his wrongful eviction from the lease. The case was submitted to the jury on special issues, which resulted in jury findings adverse to Davis. The jury found that E. T. Strain and Louisiana Land & Exploration Company repudiated the title of Davis to the lease in question on or about March 30, 1958; that Waddell Strain concurred in and adopted, by his acts and conduct, the repudiation of Davis' title by E. T. Strain to the oil and gas lease; that the drilling operations of Zapata were commenced in good faith, but were not continued in good faith until March 14, 1958; and that Zapata ceased to conduct good faith operations on the lease on February 18, 1958. Based on the jury verdict, the trial court entered a take-nothing judgment against Davis as plaintiff in that suit.

Following the adverse judgment in cause No. 2124, Davis instituted the present proceedings against Zapata. In the trial court, appellant Davis attempted to introduce evidence of the words, acts and conduct of E. T. Strain, representatives of Louisiana Land and Exploration Company, and of Waddell Strain in their dealings with Davis and Barnes, for the purpose of showing that these people had repudiated the lease and had evicted Barnes and the appellant Davis from the leased premises by reason of Zapata's alleged failure to conduct good faith drilling operations on the leased premises. The admission of such evidence was objected to on the grounds that it was hearsay as to Zapata, and was res inter alios acta in that it constituted an attempt to introduce into evidence acts and declarations of strangers to the proceedings, or of one of the parties to the action in his dealings with strangers. The trial court excluded the testimony, the error, if any, being preserved for our consideration by a proper bill of exception. Appellant Davis also offered and attempted to introduce to the jury, for the purpose of showing that the lease had been judicially terminated, the entire judgment, including the jury findings which were set out in the judgment entered in Cause No. 2124 (plaintiff's Exhibit 15). Zapata objected to the introduction of the judgment in the former cause on the ground that it was not a party to the proceedings; that the findings of the jury in that case were not binding on it; that it was prejudicial to the rights of Zapata; and, further, that it was also res inter alios acta. Based on such objections, the trial court excluded the judgment from consideration of the jury, but admitted it for the court's consideration alone. The trial court's error, if any, in excluding the judgment from consideration of the jury has likewise been preserved, and is one of the points upon which this appeal is predicated.

In addition to certain special exceptions and denials contained in its answer to appellant's pleadings, Zapata, by way of affirmative defenses, plead: (1) that it had fully performed and discharged all of the covenants, obligations, etc. imposed on it by any agreement with plaintiff; (2) that plaintiff, having joined in and become a part of the operations and performance of defendant (in its operations on the lease), is now estopped to prosecute this action

against defendant; and (3), that if plaintiff ever had any cause of action against defendant, plaintiff joined in and accepted the work done and had by defendant, and the suit here attempted to be asserted by plaintiff is barred by the law of laches and stale demand, waiver and estoppel.

The case was submitted to the jury on ten special issues. All of the defensive issues submitted to the jury were answered favorably to defendant Zapata. The jury also found that Zapata had commenced its operations on the leased premises in good faith, but "hung" on the question of whether the operations were thereafter continuously conducted in good faith and with due diligence. The jury found that Davis and his associates had accepted the well drilled by Zapata as a well drilled in compliance with the terms of the contract, and had represented to Zapata that they would take over the drilling of such well as a well drilled in compliance with the terms of the contract; further, it was found that Davis and his associates agreed to release Zapata from the contract, and that Zapata relied upon the statement of Davis and his associates that they would take over the drilling of such well as a well drilled in compliance with the contract. The trial court, after having been advised that the jury could not agree on Special Issue No. 2, or the damage issue, Special Issue No. 7, accepted the partial verdict, dismissed the jury, overruled appellant Davis' motion for mistrial, granted Zapata's motion for judgment, and entered judgment for appellee that appellant take nothing. From such judgment appellant has perfected his appeal, and this matter is now before us.

Appellant's second and third points are complaints that the trial court erred in excluding from the record all testimony concerning the repudiation of the lease by the surface and mineral owners due to alleged bad faith operations by defendant, and in excluding from the jury the judgment entered in a prior suit whereby the lease in question was judicially terminated. Since these two points are closely related, in that both involve questions of evidence, we have elected to discuss them before discussing appellant's Point One and Point Four, which raise questions relating to the court's charge and the propriety of the court's judgment entered on the partial verdict returned by the jury in this cause.

On March 29, 1958, following Zapata's written notice of its desire to terminate its operations on the lease, J. C. Barnes, having made a trade with Davis to continue operations, moved a big rotary rig on the premises. After the rig was operating for about three days, the landowner, Strain, and the mineral owner, Louisiana Land and Exploration Company, repudiated the lease, denied the good faith of the holding operation that was carried on by Zapata, and denied that such holding operation was sufficient (under the terms of the lease) to maintain the lease beyond its primary term; whereupon Barnes abandoned his operation and moved the rig off the premises at a cost to him of $4,000 to $5,000. The repudiation of the lease was made to Mr. J. C. Barnes and to appellant Davis. The landowners (the Strains) threatened suit to cancel the lease if the operations of Barnes were continued. Objection having been made, the testimony of Davis, Barnes and Waddell Strain as to the repudiation of the lease by the landowners was excluded by the court. Also excluded was the testimony of Barnes and of Glen L. Evans, the division manager of Louisiana Land and Exploration Company, regarding a letter (likewise excluded) from the mineral owner, Louisiana Land and Exploration Company, to Zapata, repudiating the lease; a copy of such letter having been directed to Barnes.

Appellant contends that the testimony relating to repudiations of title made by the land and mineral owners was offered, not to prove the truth of such assertions, but to prove that such statements had been made, and to show the consequences that resulted from such statements, and that such testimony was clearly admissible under recognized exceptions to the hearsay rule.

Under the facts of this case, we do not believe such evidence was admissible. Neither the Strains nor Louisiana Land and Exploration Company were parties to this suit. Neither was Barnes a party to this proceeding. Being strangers to the proceedings here involved, the testimony of Barnes, a stranger, concerning his dealings with, and the acts and declarations of, other strangers (the Strains and Louisiana Land and Exploration Company) could have no bearing on any material issue in this case, and was properly excluded on the ground of irrelevancy. By the same token, the testimony of Davis, one of the parties to the action, as well as that of Waddell Strain and Glen L. Evans was properly excluded. The prohibition of such testimony on the ground of irrelevancy has application to the acts and declarations not only of strangers, but also to the parties to the action in their dealings with strangers. In addition, the trial court excluded a letter written by Louisiana Land and Exploration Company to Zapata in which it was asserted that the lease had expired because of the failure of continued operations. Such letter being from a stranger to these proceedings, and containing an ex parte self-serving declaration, was incompetent and without probative force. Facts such as these, sought to be put in evidence, including the letter, are known in the technical language of the law as res inter alios acta, and are excluded because (as said in Stuart v. Kohlberg, Tex.Civ.App., 53 S.W. 596, 597), "' * * * it would be manifestly unjust to admit, since the conduct of one man under certain circumstances, or towards certain individuals, varying, as it will necessarily do according to the motives which influence him, the qualities he possesses, and his knowledge of the character of those with whom he is dealing, can never afford a safe criterion by which to judge of the behavior of another man similarly situated, or of the same man towards other persons.' Tayl.Ev. § 317." Other cases in which the same principle of law is announced are: Gruss v. Cummins, Tex.Civ.App., 329 S.W.

2d 496; Taylor v. McFatter, Tex.Civ.App., 109 S.W. 395; and Missouri, K. & T. Ry. Co. of Texas v. A. E. Want & Co., Tex. Civ.App., 179 S.W. 903.

If the testimony was not offered to prove the truth of the matters stated by Mr. Strain and Louisiana Land and Exploration Company, we fail to see how it could be relevant or material to any issue joined between the parties to this cause. This was a suit by Davis against Zapata for an alleged breach of the farmout agreement. The question involved in this litigation is not *whether the operations of Zapata were sufficient to hold the lease under the terms of the oil and gas lease, but whether the operations of Zapata were sufficient to satisfy its obligations to the appellant Davis and his associates under the terms and conditions of the farmout letter of January 7, 1958.* The statements and opinions of both the Strains and of Louisiana Land and Exploration Company were concerned, not with the question of whether Zapata had or had not satisfied its contractual obligations to appellant Davis and his associates, but solely with the question of the termination of the oil and gas lease. The opinions expressed by them were speculative and conjectural in nature, and were based upon questions of fact and law which they had neither the competency nor the authority to decide. Page v. Scaramozi, Tex.Civ. App., 288 S.W.2d 909 (err.ref., n. r. e.); Seydler v. Baumgarten, Tex.Civ.App., 294 S.W.2d 467 (err. ref., n. r. e.); Turner v. Stoker, Tex.Civ.App., 289 S.W. 190 (err. ref.); Dunlap Hardware Co. v. E. F. Elmberg Co., Tex.Civ.App., 252 S.W. 1098; McCormick & Ray, Texas Law of Evidence, Sections 1391, 1399.

Appellant's second point is accordingly overruled.

Appellant's third point is the complaint that the trial court erred in excluding from the jury the judgment rendered in a prior suit, whereby the lease was judicially terminated.

It is undisputed that Zapata was not a party to the prior suit, in which the judgment sought to be introduced here, was rendered. As to Zapata, the judgment was res inter alios acta, and could have no effect whatever. The purpose for which a judgment is sought to be introduced, often and most generally determines whether it is admissible. The question of whether or not the oil and gas lease was maintained in effect after the expiration of its primary term on February 4, 1958, was one of the questions in dispute in this suit, and the fact that it was a disputed issue was stipulated and agreed upon by both sides. The stipulation was read to the jury and was placed in evidence as plaintiff's (Davis') Exhibit No. 1. In addition, the judgment offered in evidence was offered in its entirety, and no effort was made by appellant to select the admissible parts, if any, although the judgment contained the court's entire charge, including the special issues and the jury's findings thereon. Among the findings included in the judgment were express findings to the effect that E. T. Strain and Louisiana Land and Exploration Company repudiated the title of Davis to the leasehold estate in question; that the drilling operations of Zapata were not conducted in good faith, etc.—these being the facts plead by appellant which he necessarily relied upon, and under his theory any recovery in the case at bar depended upon the establishment of identical facts, by favorable jury findings.

In general, a judgment in another cause finding a fact now in issue is not admissible. The fact that another jury had theretofore, in another case, determined the very questions at issue in the present trial would have had a strong tendency to induce the jury in the subsequent case to reach the same conclusion, and would therefore have been very prejudicial. Such judgment, under well settled rules, could not have been introduced in evidence to establish the facts on which it was rendered. Jones v. Teat, Tex.Civ.App., 57 S.W.2d 617, aff'd. Tex.Com.App., 89 S.W.2d 987; Wiggins v. Holmes, Tex.Civ.App., 39 S.W.2d 162 (err. ref.); McCormick & Ray, Texas Law of Evidence, Section 1279.

While we recognize the rule announced in McCamant v. Roberts, 66 Tex. 260, 1 S.W. 260, that a judgment is always admissible in evidence for the purpose of showing the fact of its own existence, it is not admissible for the purpose of showing what matters were adjudicated except where the parties and the subject matter in each suit are the same, or where the matter determined was of a public nature (in rem) and from public considerations should be considered binding upon all persons.

Clearly, the entire judgment was not admissible, and the rule applies that where evidence in the form of a letter, document, deposition or conversation contains several facts, some of which are inadmissible, the burden is on counsel for the offeror to select the admissible parts. Should he fail to do this, and offer the entire instrument or conversation, he cannot complain if the offer is rejected by the judge on proper objection. McCormick & Ray, Texas Law of Evidence, Section 21 at page 20 (together with cases cited thereunder).

Appellant's third point is accordingly overruled.

This brings us to a consideration of appellant's first point, by which it is contended that the trial court erred in overruling plaintiff's motion for mistrial and in granting defendant's motion for judgment on the partial verdict of the jury, for the reason that the jury was hopelessly deadlocked on Special Issue No. 2 which issue, appellant asserts, was the controlling issue of fact as to defendant's liability; in that, if answered favorably to plaintiff, such would have established defendant's breach of contract by its failure to conduct drilling operations in good faith, to which the issues that were answered do not constitute a defense.

We believe such contention must also be overruled. There is sufficient evi-

dence in the record to support the jury findings that Davis and his associates accepted the well drilled by Zapata on the assigned premises as a well drilled in compliance with the terms of the farmout letter; that Davis and his associates agreed to release Zapata from the terms of the contract set out in the farmout letter; and that Zapata relied upon the representation of Davis and his associates that they would take over the drilling of such well as a well drilled in compliance with the terms of the farmout letter.

Appellant argues that there was no acceptance, waiver or estoppel on the ground that he had no knowledge or information concerning the operations conducted by Zapata. It is true that appellant Davis denied that he had any knowledge of the manner in which Zapata had conducted its operations, or that he ever accepted the well, or agreed to release Zapata from its obligations under the farmout letter.

The testimony of Hugh Leidtke, president of Zapata, and of L. H. Tyson, an associate of appellant Davis, bearing on the question of knowledge, acceptance and release, was directly contrary to that of Davis. According to the testimony of Mr. Leidtke, when Zapata advised appellant and his associates of its desire to cease operation, by letter dated March 14, 1958 (pursuant to paragraph II(b) of the farmout letter), a meeting was held in the office of Mr. Hamilton McRae, on March 14 or 15, with Davis, Tyson and Leidtke participating. According to Leidtke, Mr. Davis explained at this meeting that a deal had been worked out with a Mr. J. C. Barnes to take over the deal, and that it was his desire and the desire of his associates, Mr. Tyson, Mr. Adams and Doctor Hall, to release Zapata from its obligations at that time, take the lease back, and make a deal with J. C. Barnes; and that he (Leidtke) had agreed to it. Leidtke asserted that his company was verbally released at this meeting by both Mr. Tyson and the appellant Davis. He testified, " * * * All I know, they each said to me, 'you are released and we

are happy we are taking this thing over' * * *." Leidtke also testified that subsequent arrangements were made to continue the cable tool operations initiated by Zapata until Barnes could move on, the cost of such cable tool operations after March 14 or 15 to be shared one-third by Zapata, one-third by Barnes, and one-third by Davis and his associates. Tyson confirmed that the meeting was held. He said that Mr. Leidtke had discussed with them the cable tool operations that had been conducted by Zapata on the lease in question; that he knew how these operations had been conducted and knew that Zapata had not drilled very deep. A portion of Mr. Tyson's testimony is set out:

"Q. Please state whether you then released Mr. Leidtke from the obligations under that letter agreement? A. Yes, I released Mr. Leidtke.

"Q. Did the others that were there, your associates, agree too? A. Everybody agreed to release him and he agreed to pay a third of the cost for a certain length of time.

"Q. Did Jefferson Davis agree to that? A. Yes, as I remember he did. We all agreed to it."

While there is an obvious conflict between the testimony of appellant Davis and that of the witnesses Leidtke and Tyson, as to whether Davis himself had any knowledge of the manner in which Zapata had conducted its operations, or whether he had released, or agreed to release, Zapata from its obligations under the farmout letter, it affirmatively appears from Davis' own testimony that Davis had commenced negotiations as early as March 16 (following Zapata's written notice on March 14) to put someone else on the lease. Davis testified that he contacted Mr. J. C. Barnes on March 16 and made a trade with him the following day (March 17) to re-enter the Callery & Hurt Well (an old well on the leased premises which had previously been plugged and abandoned at a depth of 11,500

feet, prior in time to any of the contractual relations between the parties to this suit), and that, thereafter, about March 29, Barnes moved a big rotary rig on the premises and prepared to re-enter the Callery & Hurt Well. Davis, on direct examination, answering the questions propounded by his attorney, Mr. Bezoni, testified as follows:

"Q. All right, now, tell the court and jury what the deal was as percentagewise and obligationwise of the parties that was agreed upon in Mr. McRae's office? A. The agreement was that since we had the letter from Zapata stating that they were going to turn it (the lease) back to us that we would take it over. Mr. Barnes was to pay a third, Zapata was to pay a third and Hall and Adams and Tyson and myself were to pay a third of the cost of operating the spudder whom Zapata had put on the lease."

Davis contends that Mr. Leidtke was not present at the meeting referred to above, and that he had never attended any meeting with Leidtke in Mr. McRae's office. Whether there was one meeting or two meetings, and whether the meeting attended by Mr. Leidtke and Mr. Tyson in Mr. McRae's office was also attended by Mr. Davis, and whether appellant Davis and his associates did, at that time, release Zapata, accept the well, take back the lease and draw down the assignment, etc., were disputed questions of fact, and were for the jury to resolve.

Appellant argues that if Zapata should contend that the "acceptance" of the well by Davis and his associates as a well drilled in compliance with the farmout agreement (as found by the jury) constituted a waiver of the right of plaintiff to sue defendant for the bad faith operations, such theory is of no avail to defendant, because Davis did not have full knowledge of the material facts. We agree with appellant's statement of the law, that a waiver is an intentional release or relinquishment of a right that is, at the time, known to the party

making it; and without full knowledge of material facts, there can generally be no waiver. Roberts v. Griffith, Tex.Civ.App., 207 S.W.2d 443 (err. ref.); Ford v. Culbertson, Tex.Civ.App., 300 S.W.2d 152; 158 Tex. 124, 308 S.W.2d 855; Bering Mfg. Co. v. W. T. Carter & Bro., Tex.Civ.App., 255 S.W. 243, aff'd. Tex.Com.App., 272 S.W. 1105.

However, in the case at hand, no issue was requested by either party on the question of knowledge or intention, and none was submitted. After the verdict was returned and received by the court, neither party requested of the trial court that it make and file written findings. Rule 279, Texas Rules of Civil Procedure, provides, in part, as follows:

"Upon appeal all independent grounds * * * of defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived; but where such ground of * * * defense consists of more than one issue, if one or more of the issues necessary to sustain such ground of * * * defense, and necessarily referable thereto, are submitted to and answered by the jury, and one or more of such issues are omitted, without such request * * *, *and there is evidence to support a finding thereon,* the trial court, at the request of either party, may after notice and hearing and at any time before the judgment is rendered, make and file written findings on such omitted issue or issues in support of the judgment, *but if no such written findings are made, such omitted issue or issues shall be deemed as found by the court in such manner as to support the judgment."* (Emphasis supplied.)

■ Since neither party to this proceeding made any request for additional issues, or for findings to be made, and the court having refrained from filing any written findings of its own, if there were any omitted issues; we are required by the rule

to deem such omitted issues, if any, as having been found by the court in such manner as to support the judgment.

■ Appellant did not plead, alternatively or otherwise, that the acceptance of the well and/or the alleged release of Zapata from its obligations under the farmout agreement was obtained as the result of either fraud, accident or mistake, and while we have considered all these questions, as well as the assertion made by appellant that "no consideration" had been established for appellant's agreement to accept the well as a well drilled in compliance with the contract, as found by the jury, we have concluded that appellant's first point should be, and it is accordingly, overruled.

■ Appellant's fourth and last point is based on the contention that the trial court erred in refusing to give the following instructions, presented by plaintiff, in its charge to the jury:

"You are instructed that *in order to maintain an oil and gas lease in effect* after the expiration of its primary term without production, the following must take place:

"(a) Drilling must have commenced.

"(b) The drilling must have been in good faith.

"(c) The drilling must continue in good faith and with due diligence." (Emphasis ours.)

The only obligation imposed upon defendant Zapata with respect to the drilling of a well was the obligation imposed upon it by the terms of the farmout agreement; and the instructions given the jury related, and we believe properly so, not to the oil and gas lease, but to the contract or farmout agreement under which said oil operator was drilling said well. The farmout agreement did not specifically provide that Zapata was to conduct its operations in such manner so as *to maintain the oil and gas lease in effect* after the expiration of its

primary term, but it did otherwise specifically provide the manner in which the operations were to be conducted, and such requirements might well have been greater, or less, than those required to maintain the oil and gas lease in effect. We believe the trial court committed no error in refusing to submit the requested charge as presented by appellant. We have considered other questions raised in the same point, and without further discussion, say that they are likewise overruled.

Having considered all points raised by appellant, and having found no reversible error, the judgment of the trial court is affirmed.