## McCoy v. Kilgore's Adm'r.

February 24, 1948.

Jim Sowards, Judge.

B. S. Grannis and Chas. H. Reidinger for appellant.

Harvey Parker for appellee.

OPINION OF THE COURT BY JUDGE KNIGHT—Affirming.

Clyde E. Kilgore, a soldier in the late war, was killed in action in the Pacific area on May 22, 1945. Having died intestate, Norman W. Bowman qualified as administrator of his estate in the Lewis County Court. Among the personal effects of the deceased soldier, which were returned to his mother, Bessie Esham, by the War Department, was a letter dated April 20, 1945, written to him by his uncle, Bowman McCoy, appellant herein, which contained these words: "I am still gettin your allotment pay yet all right. You will have a nice bunch of money when you come home. You have now got $902.00 I am taking care of it so you will have it when you come home."

This letter was turned over to appellee as administrator of decedent's estate and, as such, he filed suit against appellant, Bowman McCoy, for $902 which he alleged was being held in trust by said McCoy for the said Kilgore upon his return. In an amended petition it was alleged that part of the said $902 held in trust by appellant was the proceeds of a tobacco crop grown on the land of appellant by the decedent in 1943, and which could not be sold before he was inducted into the army. The balance was made up of allotments sent to appellant by deceased from time to time, the exact amount of each being unknown to plaintiff as administrator. A denial made up the issues and upon trial the jury rendered a verdict in favor of the appellee for the full amount prayed for. From the judgment based on this verdict, appellant prosecutes this appeal.

### What Proof Shows.

Appellee's proof consisted solely of the letter here-

tofore referred to, written to the deceased soldier by appellant, and which the latter admitted at the trial to have written. Appellee rested his case on this letter and the statement contained therein, quoted above, to the effect that appellant was holding $902 which he was taking care of until the soldier should get home.

Appellant's proof was in substance that he was an uncle of the deceased, who was born in his home and lived there from the time he was 18 months old until he was inducted into the army in 1943; that the boy's mother, Bessie Esham, sister of appellant, gave him up when he was 18 months old, since which time he had not lived with her; that while in the army deceased corresponded with appellant and he introduced in evidence four letters from him. One was dated March 12, 1944, and contained these words: ''Your $3.75 bond allotment stopped the first of the month and I am going to have thirty a month took out of mine and sent to you.'' The second letter was dated May 10, 1944, and contained these words: ''I am giving you thirty dollars a month out of my pay you ought to start getting it soon I also sent you a money order for thirty.'' The third letter was dated May 28, 1944, and contained these words: ''You ought to start getting that allotment I made you it started April first.'' The fourth letter dated May 19, 1945, contained these words: ''Have you ever got any of that allotment I give you. I also sent you a money order.'' Appellant admitted receiving the money order and allotments referred to above totaling the sum of $390. He also admitted the sale of the 2½ acre crop of tobacco which appellant and deceased were raising together as partners on rented land when deceased was inducted. He admitted that the net proceeds of the sale of this tobacco was $911 of which deceased's half would be $456. This makes a total of $846 from the allotments and the one-half of the tobacco crop which appellant was holding for deceased. The proof does not show where the balance of the $902, referred to in appellant's letter, came from but it is stated in appellant's brief that this difference of $56 was made up by sale of a calf, which deceased had on his uncle's farm when he was inducted into the army, and later sold by his uncle, the appellant.

So it appears from the evidence that there is no

real dispute as to the amount held by appellant and which he said in his letter to decedent he was "taking care of so you will have it when you come home."

## Appellant's Defense.

Appellant made two principal defenses at the trial. First, that the allotments and money order, sent by deceased to appellant, totaling $390 were gifts to him. Second, that most of the net proceeds of the tobacco crop belonging to deceased was taken up by cash advancements on said crop made to deceased by appellant. He claims that the letter dated April 20, 1945, which he wrote to deceased containing the statement heretofore quoted, was not an admission on his part that he was holding this sum of $902 in trust for deceased but that he meant that if deceased got back home he was going to give it back to him. He contends that the letters from deceased introduced in evidence, two of which used the words, "I am giving you" and "I give you," prove that the amount sent were gifts and not sums sent to him to keep for the absent soldier until his return.

As to the advancements on the tobacco crop, appellant attempted to testify about such advancements but objection was sustained to such testimony. He made an avowal that, if permitted to do so, he would testify and it would be true that he did make advancements on dates ranging from September 17, 1943, through February 12, 1944, of sums totaling $265. The judge of the lower court was correct in the exclusion of this testimony as it was clearly incompetent under Sec. 606, subd. 2 of the Civil Code of Practice as being testimony concerning a transaction with a dead person, whose mouth was closed and who could not refute such testimony.

## Points Raised On Appeal.

Appellant asks reversal on three grounds: (1) Misconduct of appellee's counsel in final argument on trial of case. (2) Amount of recovery is excessive, is based on passion and prejudice, is not supported by the evidence and is contrary to law. (3) Error of the court in rejecting competent evidence for the defendant.

The complaint of misconduct of counsel is based on

three statements made in the closing argument to the jury by appellee's counsel. One of these statements, according to appellant's brief, was to the effect that appellant was a man of wealth, owned two good farms and thousands of dollars in the bank. There was no proof to sustain this statement but objection was sustained at the time and the court admonished the jury not to consider it. However, since the bill of exceptions contains no record of the improper argument complained of, we are not authorized to consider this statement, if made, as a ground for reversal.

Another statement complained of, and which is set out in the bill of exceptions, is that in his closing argument the appellee's attorney misquoted the evidence and told the jury that only one of the letters in the evidence for the defendant stated that decedent was giving the allotment to him when in fact three of said letters so stated in plain language. As a matter of fact, as shown by the quotations from the letters heretofore set out in this opinion, two of those letters, the second dated May 10, 1944, and the fourth dated May 19, 1945, use the words "give" or "giving" with reference to the money being sent. We do not think this slight discrepancy in the number of letters that referred to give or giving is of great importance or that it affected the decision of the jury. Certainly it is not sufficient to justify a reversal.

The most serious complaint of appellant as to improper conduct of counsel was that he stated in his argument that the word "sent," as used in the letters from deceased to appellant, had been rubbed out and the word "give" substituted by some one other than decedent. It is true, as appellant contends, that there is no proof in the record on which to base such statement. However, the actual letters were introduced in evidence and appellee's attorney would be within his rights if, in displaying them and commenting on them to the jury, he could show such changes had been made or attempted. The original letters are not before us and we cannot say whether there was any basis for this argument. The jurors, with the letters before them, could determine for themselves whether any erasures or changes had been made. In his brief, appellant's counsel says these state-

ments of counsel were objected to at the time and the court stopped him. However, the bill of exceptions, on which this court must depend for an accurate account of what took place at the trial, does not show any objection was offered to this part of the argument at the time it was made. Since no objection was made at the time, it is, of course, too late to raise the question on appeal.

As to the second ground for reversal as set out above, little need be said. There appears to be no real ground for dispute as to the amount of money held by appellant. The only question in dispute is whether the money was a gift to him from deceased or whether it was merely being held for deceased pending his return from the army. Since this was a question of fact and was decided by a properly instructed jury, we are not authorized to reverse that finding. Nor on the record would we be justified in saying that the verdict of the jury is based on passion and prejudice, or that it was not supported by the evidence or that it is contrary to law.

As to the third ground for reversal, the only evidence rejected by the court which appellant regards as competent and which is referred to in the bill of exceptions is the proof offered with reference to the advancements claimed to have been made by appellant to the deceased on his tobacco crop totaling $265. We think the court properly excluded this testimony for the reasons heretofore indicated.

### Conclusion.

No objections were raised to the instructions given to the jury. The issues raised were submitted to the jury under proper instructions and we think its verdict was justified under the evidence produced before it. Perceiving no substantial error in the record which would justify a reversal, the judgment of the lower court based upon that verdict is hereby affirmed.

Judgment affirmed.