**T. R. VESSELS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 43719.

Court of Criminal Appeals of Texas.

May 5, 1971.

Rehearing Denied June 9, 1971.

Warren Burnett, Odessa, John Kiibler, Michael Ramsey, Houston, for appellant.

Guy Hardin, Pampa, Carol S. Vance, Dist. Attys., Phyllis Bell and Thomas C. Dunn, Asst. Dist. Attys., Houston, and Jim P. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for rape with the punishment being assessed by the jury at 20 years.

This cause was tried in Harris County following a change of venue from Gray County which was preceded by a reversal of the first conviction obtained. See: Vessels v. State, Tex.Cr.App., 432 S.W.2d 108.

The sufficency of the evidence is not challenged and we do not deem a recital of the facts essential to a proper disposition of this cause.

At the outset, the appellant contends the "trial court erred in admitting into evidence items seized pursuant to the execution of a constitutionally invalid search warrant." It is his claim that the affidavit upon which the search warrant was based failed to re-

flect probable cause. He cites and relies upon Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, and calls attention to the fact that certain articles of the appellant's clothing and a knife "persuasively similar to the knife described by the prosecutrix as used in the rape" were seized as a result of a search of appellant's home and an automobile pursuant to such warrant.

The affidavit or complaint for the issuance of the search warrant reads as follows:

"I, R. H. Jordan, do solemnly swear that I have good reason to believe and do believe that T. R. Vessels on or about the 28th day of April 1966, in the County and State aforesaid, did voluntarily take from the possession of Mary Beth Fatheree, without her consent and with intent to deprive the owner of the value thereof and to appropriate the same to his own use and benefit, the following described corporeal personal property, to-wit: Lawful money of the United States of the value and in the sum of $7.00. And I do further solemnly swear that I have good reason to believe and do believe that said property is now concealed by T. R. Vessels in said County and State on premises under his control located upon Texas Farm to Market Road 750 between Texas Highway 70 and South Barnes Street in the City of Pampa, Gray County, Texas, and commonly known as 409 McCullough Street just South of Pampa, Gray County, Texas, said house being a white stucco house with sheet metal roof aluminum in color, and having green windowtrim and black screen door, and having one window and one door on the north side of said house, three windows on the east side thereof and two windows on the westerly side thereof, and including all appurtenances thereto, and/or in a certain automobile in said County and State under his control described as one 1954 Chevrolet four door station wagon, with light green top and darker green lower portion,

bearing 1966 Texas License No. BWH 118.

"I do further solemnly swear that I have good reason to believe and do believe that T. R. Vessels on or about the 28th day of April, 1966, in the County and State aforesaid, in and upon Mary Beth Fatheree, a woman, did make an assault, and did then and there, by force, threats and fraud, and without the consent of the said Mary Beth Fatheree, ravish and have carnal knowledge of the said Mary Beth Fatheree, and that in the commission of the aforesaid offense of robbery, and in the commission of the aforesaid offense of rape, the said T. R. Vessels used, exhibited, and assaulted the said Mary Beth Fatheree, with a knife, and did then and there with said knife cut the said Mary Beth Fatheree, and that I have good reason to believe and do believe that the above described house and premises and/or one 1954 Chevrolet four door station wagon, with light green top and darker green lower portion, bearing 1966 Texas License No. BWH 118, is a place where implements are kept therein for the purpose of aiding in the commission of offenses as are defined by the Penal Code of the State of Texas, to-wit: rape, robbery, and assault.

"My belief of the foregoing is based upon the following facts:

"In the early afternoon of Thursday, April 28, 1966, a certain white male entered the house and home of Mary Beth Fatheree at 2126 North Russell Street, Pampa, Gray County, Texas, and advised Mary Beth Fatheree that he was a gas company employee and needed to check within said house for gas leak, and upon being granted entry to said house, said man assaulted, raped, and robbed the said Mary Beth Fatheree, taking without her consent and against her will lawful money of the United States of the value and in the sum of Seven Dollars ($7.00), and ravishing and having carnal knowledge of her against her will and without her consent and by use of force, threats,

and fraud, and assaulted her on more than one occasion while in said house with a knife, cutting her therewith in several places about the body, which required her hospitalization and treatment therefor, and that after said offenses were committed the said man fled from said house down the alley. That a full and complete description of said assailant was given by Mary Beth Fatheree to this affiant, and that the description of said subject in all details conforms to the description of T. R. Vessels; that Mary Beth Fatheree has positively identified a picture of T. R. Vessels and has positively identified T. R. Vessels in person, and picked him from a regular police line-up, as being her said attacker and the person who committed said offenses. An automobile fitting the description of the one above belonging to T. R. Vessels was seen in the area of the Fatheree residence in Pampa, Texas, near the time of the said offenses. The knife possessed and used by said man in said offenses was carried with him from the said residence. Said T. R. Vessels, when arrested shortly before noon on May 12, 1966, did not have upon his person a knife of any kind. The said knife used by the person, who committed said offenses became bloody as a result of said assault, and some of said man's clothing was spotted with blood of Mary Beth Fatheree.

"Such of the above facts as are not personally known to me have been made known to me, and I have been informed concerning same, by reliable, credible, and trustworthy citizens of Gray County, Texas."

It would appear from the above that we are not dealing with an affidavit for the issuance of a search warrant where the probable cause is based solely upon hearsay unaided by any independent corroboration or surveillance as was the case in Aguilar. We are convinced by a close reading of the affidavit that more than hearsay is here involved. Aguilar itself recognized that if the bold conclusions there had been supplemented by "the fact and results of * * * a surveillance * * * this would, of course, present an entirely different case." 378 U.S. at 109, n. 1, 84 S.Ct. at 1511, 12 L.Ed.2d 723. This does not mean that a surveillance or independent police investigation will always save an affidavit which falls short of the Aguilar standards. See: Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637.

■ It is unfortunate that we are unable to determine exactly from the affidavit facts which were within the personal knowledge of the affiant and that which was hearsay; we believe, however, that a common sense and realistic reading of the affidavit here involved reflects adequate probable cause for the magistrate to have issued the search warrant.[1] See: United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684.

The appellant next complains the trial court erred in permitting proof of extraneous offenses before any issue of identity had been raised by the appellant.

Appellant's complaint has reference to the testimony of Mrs. Hill and Mrs. Wulfman that the appellant had committed similar but extraneous offenses against them.

■ It is well established that the issue of identity of the accused as the person who committed the alleged offense may be

[1]. If it could be said that the affidavit was based solely on hearsay then the question would be whether the underlying circumstances presented to the magistrate were sufficient to satisfy the second prong of the Aguilar test—as to the officer's conclusion that the informer or informers were reliable. See: Gaston v. State, Tex.Cr.App., 440 S.W.2d 297 (concurring opinion). The affiant, the Sheriff of Gray County, did utilize the generalized recital that his informants were "reliable, credible and trustworthy citizens of Gray County, Texas", but also named one of his informers as Mary Beth Fatheree, the victim of the alleged crimes of robbery and rape, who apparently of personal knowledge gave much of the firsthand information contained in the affidavit.

raised by cross-examination. Parks v. State, Tex.Cr.App., 437 S.W.2d 554; Owens v. State, Tex.Cr.App., 450 S.W.2d 324; Hawkins v. State, Tex.Cr.App., 450 S.W.2d 349. See also: Ferrell v. State, Tex.Cr.App., 429 S.W.2d 901.

Prior to the testimony of the witnesses Hill and Wulfman the issue of identity had been raised by the cross-examination of the Sheriff of Gray County, the complaining witness and that of the State's expert witness who had testified that hairs from the complaining witness' dog were found on appellant's jacket.

█ Even if no issue of identity had been raised prior to the time the witnesses Hill and Wulfman testified the error, if any, of admitting such testimony at such time became harmless when the appellant took the stand and denied the alleged offense which also injected the issue of identity into the case.

We find nothing in the record to support appellant's claim, advanced for the first time on appeal, that he would not have taken the stand in his own defense if it had not been for the admission of the extraneous offenses.

Lastly, appellant contends the court erred in failing to give him credit for the time spent in jail from the time of his arrest until the date of the sentence in this cause now on appeal entered after a retrial of his former conviction. The record shows that the appellant has been in continuous confinement.

The appellant was arrested on May 12, 1966. Judgment was entered on October 24, 1966. After his amended motion for new trial was overruled on December 30, 1966, he gave notice of appeal. No sentence was imposed in view of the death penalty assessed and the notice of appeal. See Article 42.04, Vernon's Ann.C.C.P. In light of the punishment involved it is understandable that no "jail time credit" was requested or granted. The mandate of the Court of Criminal Appeals reversing the original conviction was issued on October 25, 1968. Following a change of venue to Harris County the sentence of the second conviction was imposed on August 15, 1969. While the formal sentence does not so reflect, the docket sheet and the briefs of the State and appellant clearly indicate that at the time of such sentence the court gave the appellant "jail time credit" for 1 year, 5 months and 15 days.

It would appear that our decision on the question presented will be controlled by Ex parte Washburn, Tex.Cr.App., 459 S.W.2d 637 and Ex parte Griffith, Tex. Cr.App., 457 S.W.2d 60. See also, North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656; Robinson v. Beto, 5 Cir., 426 F.2d 797; Gremillion v. Henderson, 5 Cir., 425 F.2d 1293.

As in Washburn we shall divide into four periods the times in question.

1. The period of time between petitioner's arrest on May 12, 1966 until the notice of appeal was given on December 30, 1966.[2]

2. The period of time between December 30, 1966 and the date the mandate issued from this Court reversing said conviction on October 25, 1968.

3. The period of time between the above mentioned mandate on October 25, 1968 and the date appellant was sentenced following a new trial, August 15, 1969.

4. The period of time between the sentence on August 15, 1969 and the date the mandate finally issues from this

---

2. Normally the date of the sentence would be the concluding date in period one, but where the death penalty has been assessed no sentence is imposed where an appeal is taken. Article 42.04, V.A.C.C.P. Notice of appeal in such cases is to be given within ten days from the overruling of the motion or amended motion for new trial or within ten days of judgment if no such motion is filed. Article 44.08(b), V.A.C.C.P. It would also appear that all death penalties assessed are automatically reviewable. See: Ex parte Caldwell, Tex.Cr.App., 383 S.W.2d 587, 590.

Court disposing of this particular appeal.

■ The appellant is constitutionally entitled to credit on his sentence of August 15, 1969 for periods two and four. Ex parte Washburn, supra; North Carolina v. Pearce, supra; Robinson v. Beto, supra. See also: Ex parte Griffith, supra.

■ Article 42.03, V.A.C.C.P. makes it discretionary with the trial judge as to granting credit on a sentence for time spent in jail prior to trial and sentence. It is doubtful that such statute is applicable to death penalty cases. See footnote #2. At any rate the trial judge at the original trial did not attempt to exercise any discretion he might have had. In view of the decision in Ex parte Washburn, supra, it would not appear the trial judge at the second trial had authority to grant credit for period one on the August 15, 1969 sentence.

■ There can be no question that the trial judge had authority to grant him credit on such sentence for period three extending from October 25, 1968 to August 15, 1969. See Gremillion v. Henderson, supra; Ex parte Griffith, supra. The court actually gave "jail time credit" for a period of 1 year, 5 months and 15 days. It is for a longer time period than involved in period three. Just how the trial judge arrived at this calculation is not revealed by this record.

In light of the record before us, we hold that the appellant is entitled to credit on his current sentence for periods two, three and four. We shall assume that such credit shall be noted upon the mandate of this Court after its receipt by the trial court. Further, a copy of this opinion will be forwarded to the Department of Corrections.

Finding no reversible error, the judgment is affirmed.

ODOM, J., not participating.