Carlos Rene RUBIO, Appellant,

v.

The STATE of Texas, Appellee.

No. 58370.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 24, 1980.

Rehearing Denied Nov. 26, 1980.

Randy Schaffer, Houston, on appeal only, for appellant.

Carol S. Vance, Dist. Atty. & Calvin A. Hartmann & Jim Moseley, Asst. Dist. Attys., Houston; Robert Huttash, State's Atty., Austin, for the State.

---

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for aggravated rape. V.T.C.A. Penal Code, Sec. 21.03. After finding appellant guilty the jury assessed punishment at 99 years.

The prosecutrix testified that in the early morning hours of February 22, 1975, she was alone in her car traveling on the Gulf Freeway in Houston. Appellant was driving a truck in the next lane and began honking at her. She was startled and drove over the curb onto the shoulder of the highway. Appellant pulled onto the shoulder in front of her automobile, exited his vehicle and approached her window. He told her that she had a flat tire. When she stepped from her car appellant seized her by the arm, pointed a pistol at her and said, "You are going to do what I want or I will shoot you ... Come with me." He then placed her in his truck, drove to a field and raped her.

In addition to the evidence from the prosecutrix, the State, over appellant's timely objection, offered in its case in chief the testimony of D___ H___. This witness testified that at about midnight on February 21, 1975, she was traveling alone in her car on a road located about two or three miles from the Gulf Freeway. A truck in the next lane appeared to be trying to push her car off the side of the road. She pulled onto the shoulder as did the truck. She testified appellant exited from the truck, came to her window and told her that she had flat tires. When she rolled the window down he pointed a pistol at her and said, "You are coming with me." He grabbed her, struck her and attempted to place her in the truck. He demanded that she remove her clothing. A struggle ensued during which she was beaten severely and shot three times. Cross–examination of the witness tended to show that appellant, in addition to the acts testified to on direct examination, attempted to rape D___ H___.

Appellant took the stand and admitted having sexual intercourse with the prosecutrix. However, he asserted "consent" as his defensive theory to the offense charged. When the State attempted to cross–examine him concerning the extraneous offense, he refused to testify.

In its charge to the jury, the court limited consideration of the extraneous offense to the issue of intent.

In his first ground of error appellant contends that "the trial court reversibly erred in allowing evidence of an extraneous attempted rape of another female which occurred at another time and place from the alleged rape of the complainant, in the absence of the complainant." He maintains that the evidence of the extraneous offense was inadmissible on the issue of intent and that it likewise was not admissible to show lack of consent on the part of the complainant.

The State contends that evidence of the extraneous offense was properly admitted to rebut appellant's defensive theory of consent. The State argues that the extraneous offense tended to defeat said defensive theory in that it showed an intent to have sexual intercourse with the prosecutrix by means of force and threats.

■ It is well established that an accused may not be tried for some collateral crime or for being a criminal generally. *Christiansen v. State*, Tex.Cr.App., 575 S.W.2d 42; *Hines v. State*, Tex.Cr.App., 571 S.W.2d 322; *Cameron v. State*, Tex.Cr.App., 530 S.W.2d 841. The exceptions to the rule

against extraneous offenses were set forth in *Albrecht v. State*, Tex.Cr.App., 486 S.W.2d 97. There we said:

"... Evidence of other crimes committed by the accused may be admitted, however, where such evidence is shown to be both material and relevant to a *contested* issue in the case.... Thus, before evidence of collateral crimes is admissible, a relationship between such evidence and the evidence necessary to prove that the accused committed the crime for which he stands charged must be shown...."

It was also stated:

"Evidence of extraneous offenses committed by the accused has been held admissible: ... (3) To prove scienter, where intent or guilty knowledge is an essential element of the state's case and cannot be inferred from the act itself.... (6) To refute a defensive theory raised by the accused."

This Court has held that "The fact that one woman was raped ... has no tendency to prove that another woman did not consent." *Jackel v. State*, Tex.Cr.App., 506 S.W.2d 229. That case involved a prosecution for rape where the defendant admitted having intercourse with the complainant but asserted through the testimony of a defense witness that such act was with the complainant's consent. The State was permitted to introduce evidence of an extraneous rape committed by the defendant some 17 months earlier upon another woman in order to show intent. This Court reversed the conviction after citing *Caldwell v. State*, Tex.Cr.App., 477 S.W.2d 877.

*Caldwell* involved a rape prosecution. On appeal, the defendant complained that the State was permitted to introduce evidence that he had attempted to rape the sister of the prosecutrix one month before the rape that formed the basis of the prosecution. The State argued that such evidence was admissible to show intent. We reversed holding that proof of the extraneous offense was not admissible on the issue of

consent. It was found that such evidence was inadmissible because the prosecutrix was unimpeached on any material detail of her testimony. By way dicta, the Court went on to state that even if the defendant had testified and raised the issue of consent "The fact that one woman was raped ... has no tendency to prove that another woman did not consent." *Caldwell v. State*, supra at 879. This dicta later formed the basis for holding in *Jackel*.

As we construe our holding in *Caldwell*, proof of the extraneous offense was not admissible on the issue of consent because there was no conflicting evidence on that issue at trial. This conclusion is supported by an examination of the authorities cited therein.[1]

In *Higgins v. State*, supra and *Haygood v. State*, supra, both rape cases, the convictions were reversed on the improper admission of extraneous sex offenses. There was no conflicting evidence on the issue of consent in either of those cases. In *Young v. State*, supra, the conviction for indecent exposure to a child was reversed because of the admission of an extraneous offense. There, the defendant did not testify. And in *Thompson v. State*, supra, though the defendant raised consent as a defense and the State was permitted to introduce an extraneous attempted rape, the conviction was reversed on other grounds.

As noted above, the language in *Caldwell* that "The fact one woman was raped ... has no tendency to prove another woman did not consent," upon which *Jackel* is predicated, is dicta. In the light of our subsequent decision in *Albrecht* we will now consider whether, by raising the defensive theory of consent, the defendant in a rape prosecution places matters in issue which the State may rebut by introducing evidence of an extraneous rape or attempted rape.

This Court has consistently held that when a defendant raises a defensive theory of lack of intent to wrongfully engage in

1. See *Thompson v. State*, Tex.Cr.App., 327 S.W.2d 745; *Young v. State*, Tex.Cr.App., 261 S.W.2d 836; *Haygood v. State*, Tex.Cr.App., 284 S.W.2d 547; and *Higgins v. State*, Tex.Cr.App., 222 S.W.2d 241, cited in *Caldwell v. State*, Tex.Cr.App., 477 S.W.2d 877 at 879.

criminal conduct, an extraneous offense is admissible by way of rebuttal on the issue of intent. In *Avilla v. State*, 493 S.W.2d 233, the defendant was convicted of robbery. At trial, the defendant admitted taking property from the complainant, but maintained that it was given to him. It was held that three extraneous robberies were admissible on the issue of the defendant's intent. *Avilla v. State*, supra at 235. In *Chapman v. State*, 486 S.W.2d 383, the defendant admitted being present when a robbery was committed by his co-defendants, but denied any knowledge of their criminal activity. It was held that evidence of two extraneous robberies the defendant had participated in with his co-defendants was admissible. Such evidence tended to rebut the defensive theory of a lack of wrongful intent. Also see, *Berry v. State*, 477 S.W.2d 284.

In *Williams v. State*, 502 S.W.2d 135, the defendant was prosecuted for fondling. Although the defendant admitted touching the complainant, he denied any wrongful intent and maintained that he was merely tickling her. It was held that evidence of two extraneous fondling offenses was admissible to rebut the defensive theory of "completely innocent contact." *Williams v. State*, supra at 136. *Rangel v. State*, 352 S.W.2d 275, was a prosecution for indecent exposure. At trial, the defendant testified that such exposure was unintentional and the result of a broken zipper. It was held that evidence of an exposure from the preceding day was admissible on the issue of intent.

In *Drager v. State*, 548 S.W.2d 890, the defendant was prosecuted for criminal mischief. It was alleged that he had intentionally driven a tractor into a barn. At trial, the defendant admitted damaging the tractor, but maintained that the collision was a result of an accident. We held that evidence that the defendant was on probation for damaging another tractor was properly admitted on the issue of intent. *Drager v. State*, supra at 893. In *Crawley v. State*, 513 S.W.2d 62, the defendant was convicted of willful injury to the personal property of another by means of a "staged" automobile collision. Although he admitted being involved in the accident, the defendant denied any intent to willfully injure the property of the complainant. It was held that evidence of six other collisions was properly admitted at trial to rebut the defensive theory of a lack of intent. *Crawley v. State*, supra at 65. Also see, *Halliburton v. State*, Tex.Cr.App., 528 S.W.2d 216; *Elam v. State*, Tex.Cr.App., 518 S.W.2d 367.

 In order to be convicted of rape appellant must have engaged in the conduct intentionally and knowingly without the prosecutrix's consent. It is the lack of consent on the part of the prosecutrix that is the essence of the offense of rape. When the defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without the consent of prosecutrix. His intent is thereby placed in issue. Such intent cannot be inferred from the mere act of intercourse with the prosecutrix. The indictment herein alleges a lack of consent by means of force and threats.

In the instant case, appellant admitted having sexual intercourse with the prosecutrix. He maintained that she consented to the act, thus rendering his actions noncriminal. His testimony raised a defensive theory of no force or threats. This evidence directly contradicted the testimony previously given by the prosecutrix. The testimony of D___ H___ concerning an attempted sexual offense committed upon her by appellant in the same manner, geographical location and within the approximate time frame as the offense charged was relevant to whether appellant intended to have sexual intercourse with the prosecutrix in the instant case without her consent by means of force and threats.

 We hold that when a defendant in a prosecution for rape raises the defensive theory of consent, he places his intent in issue. The State may then offer extraneous offenses which are relevant to that contested issue. To the extent that it is in conflict with this opinion, *Jackel v. State*, supra, is hereby overruled.

We find that the trial court did not err in admitting evidence of the extraneous offenses involving D—— H——. Furthermore, the introduction of the extraneous offenses by the State in its case in chief before the defendant raised the defense of consent was harmless. This Court has held that erroneous premature receipt of evidence of an extraneous offense may be rendered harmless based upon the subsequent actions of the defendant at trial. *Jones v. State*, Tex.Cr.App., 587 S.W.2d 115 at 120. Thus, in *Vessels v. State*, Tex.Cr. App., 467 S.W.2d 259, we held that where no question of identity was presented, error, if any, in the introduction of two extraneous offenses was rendered harmless when the defendant subsequently presented an alibi defense. Likewise, we conclude that in the instant case appellant's defensive theory of consent rendered the extraneous offenses involving D—— H—— both material and relevant to the question of appellant's intent. Error in the premature offer of the evidence was rendered harmless in light of defendant's testimony that the prosecutrix consented. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the indictment is fundamentally defective because it fails to allege that appellant compelled submission to the rape by force and threats. The indictment alleges in pertinent part that appellant:

"... did then and there unlawfully, intentionally and knowingly by force and by threatening the imminent infliction of serious bodily injury and death to J—— S—— D——, a female not his wife and hereafter styled the Complainant, have sexual intercourse with the Complainant and without the consent of the Complainant."

This contention has been decided adversely to appellant in *Church v. State*, Tex.Cr. App., 552 S.W.2d 138. There we held that a rape indictment which failed to allege that the defendant compelled the prosecutrix to submit to rape is not fundamentally defective. The Court stated, "A reasonable reading of the entire indictment is that the prosecutrix was compelled to submit to appellant's act by force and threats." *Church v. State*, supra, at 140. Also see, *Watson v. State*, Tex.Cr.App., 548 S.W.2d 676; *Childs v. State*, Tex.Cr.App., 547 S.W.2d 613. Appellant's second ground of error is overruled.

In his last ground of error, appellant contends that the jury charge is fundamentally defective because it permitted a conviction on a theory not charged in the indictment, namely that appellant caused serious bodily injury or attempted to cause death to the victim.

Specifically, appellant complains that in charging on the abstract definitions of rape and aggravated rape the court included a theory of aggravated rape not alleged in the indictment. He argues that although the court in applying the law to the facts charged only on the theory alleged in the indictment, the portion of the charge giving the definition of the offense nevertheless authorized the jury to convict on a theory different than that alleged. Appellant concedes that there was no objection made to the charge at trial.

Where there is no objection to the charge at trial only fundamental error will be considered on appeal. *York v. State*, Tex.Cr.App., 566 S.W.2d 936; *Mulchahey v. State*, Tex.Cr.App., 574 S.W.2d 112. We find no fundamental error in the charge. In applying the law to the facts the court charged the jury only on the theory alleged in the indictment. Cf. *Lowry v. State*, Tex. Cr.App., 579 S.W.2d 477; *Jackson v. State*, Tex.Cr.App., 576 S.W.2d 88. The jury was required to find all elements of the offense alleged. *West v. State*, Tex.Cr.App., 567 S.W.2d 515. No error is shown.

The judgment is affirmed.

ROBERTS, J., concurs in results.

CLINTON, Judge, concurring.

I agree that the remarkably similar assaultive transaction offered by the State in this cause was admissible to rebut appellant's defensive testimony; I write only to point out what I perceive as the vulnerabili-

ty of attempting to resolve an evidentiary question, such as the one before us, through application of the mechanics of a "general rule" and its "exceptions." Citing an "exception" "to the rule against extraneous offenses," the majority concludes that the similar transaction here was admissible on the issue of appellant's "intent," characterizing such issue as having been "necessarily" raised by his defensive theory of "consent."

It is true that his intent was *necessarily* raised, but as a secondary issue only, when appellant denied the *use of force and threats* against the complainant. Contrary to the opinion of the majority, I believe that from the assaultive conduct of the accused—the force and threats employed to compel sexual intercourse [1] his intent to rape may indeed be inferred, given there is proof of the intercourse.

In the instant case, an assaultive attack similar to the one made upon complainant—literally, minutes before—was admissible, in my opinion, to rebut appellant's claims that he had neither pulled a pistol on complainant, nor threatened to kill her, nor assaulted her in any way.

Indeed, appellant neither admitted nor denied having sexual intercourse with complainant when he took the stand in his own defense.[2] What he did deny was the use of force and threats against her; excerpts from his testimony follow:

"[I first saw the complaining witness] after the actual curbing of the automobile, and the person got out and I learned it was a female then. * * * I believe I almost ran into her ...; I was swerving on and off the road ..., and I thought possibly some car damage had been done so I pulled her over. * * *

I was not [intentionally trying to run her off the road]. * * *

I was walking up toward the car and saying something about a flat tire and we had a conversation for four or five minutes at the car and then the person got out with a flashlight to look at it. * *

At first [our conversation] was basically about the tire itself, and then I started flirting with the young lady, noticing she was very attractive, and I started talking to her in that manner of speech. * * *

... [W]e were going to my truck.... She opened the door [to my truck]. * * I proceeded to flirt with her and so forth driving down the freeway, and as we passed by a Holiday Inn... I had said something about how I would like to go there with somebody, and I believe her question was, 'what a pity that you don't have anybody to go with to that motel,' and I said, 'Not as of now, I don't,' and she smiled. * * *

Well, after I made this statement about the Holiday Inn and talked about it for a while she said she had to get home because her husband would be home, ... and she suggested a place where we could go park at.... * * *

I remember getting on the freeway and going through this small street and then I was in this field. [But, it was at her directions that [we] got there.]"

Appellant concluded his account of his encounter with complainant by describing how "one thing led to another" [see n. 2 *ante*]. He then specifically denied upon interrogation that he "ever hit" complainant, that he threatened her, or brandished a pistol.

"Well, first of all I pulled in there and I next turned around and parked the truck in the middle of the field and I started hugging on her and one thing led to another, and we were naked by a tree of some sort. * * * I was laying down and she was on top of me and all of a sudden she jumped up and I turned around and she said 'There are some flashlights,' and I followed her out as she proceeded to get into the truck."

---

1. Only because the acts of "force" and "threats" constitute, by statute, the "circumstances" under which "the intercourse is without the female's *consent*," V.T.C.A. Penal Code, § 21.02(b), is the issue before the jury, in a peripheral sense, one of "consent." (All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.)

2. The closest appellant got in his testimony to the issue was the following:

Thus, appellant squarely contested the issue of whether he had employed acts constituting force and threats against the complainant, before the jury. The question before us, therefore, is whether a strikingly similar assault made minutes before the primary offense, and at a place just down the road, was admissible to rebut the contested issue of appellant's culpable use of force and threats against complainant.

Complainant testified that at about 12:30 a. m. on February 22, 1975, a Saturday morning, as she was driving down the Gulf Freeway in Houston, she noticed a truck honking at her; she saw the driver start over into her lane and, attempting to avoid a collision, she hit the curb and went up onto the shoulder of the highway. Thinking she had flattened a tire as she hit the drainage ditch, complainant pulled to a stop. Appellant walked up to her car and came to the window, saying she had a flat tire and he would fix it for her.

Complainant testified that the first thing she noticed about appellant was that "he had a spot of blood on his forehead;" he told her he had hit his forehead when he "hit the curb." She testified that she was "petrified," but eventually exited her car, grabbing a flashlight, to check her tires.

At this moment, appellant grabbed her arm and pulled a pistol, pointing it at her. Complainant testified:

"He said, 'You are going to do what I want or I will shoot you,' and I said, 'Okay,' and then he fired the gun at the road [behind me], and ... said, 'Come with me?,' and he still had ahold of my arm."

Appellant forced complainant into his truck and took off down the freeway. After ten or fifteen minutes, he told her he was going to take her back to her car "because he decided [she] wasn't the girl he was looking for." [3] But on approaching her car appellant failed to stop and drove to the end of a dead end street, then about 100 yards further, and stopped.

Continuing to point the pistol, and threatening to shoot her if she disobeyed his commands, appellant forced complainant to take off her blouse and halter top. Appellant "fondled [her] chest, and then he undid his pants and took them off half way. * * he [told her] ... to perform oral sex on him," which she did. Appellant then instructed her to remove her pants, and attempted sexual intercourse. Failing that, he instructed her to exit the truck and "take ahold of his penis," and walked her into the woods along a bayou.

Appellant then sat down on complainant's chest, forcing her to again take his penis in her mouth and, eventually, after getting complainant on top of him, penetrated her vagina with his penis. It was at this point that the police arrived, having been called by a man who observed the truck pass the barricade at the dead end street. Officer W. K. Allup testified that after complainant had been taken to the hospital, when he looked in the truck, "there was a considerable amount of blood stains on the seat, the steering wheel and the floorboard ... and a lot of clothing on the floorboard and the seat." [4] He further testified that, "earlier we had heard over the radio a general description of a pickup fitting this pickup, a pickup truck, a Chevrolet ...," and related that "I heard earlier about the shooting and I thought the actor would have a pistol...." Allsup did indeed find a pistol in appellant's pickup, on the driver's seat, and discovered five spent rounds and one live round in the chamber.

The testimony of Allsup and some of the facts related by complainant were illuminated by D____ H____, the victim of the extraneous transaction. In the last minutes of February 21, 1975, D____ H____ had left Deer Park, and was travelling near the Gulf

3. Complainant had testified that appellant told her a story about his brother being stabbed by a girl in California, who appellant claimed, looked like complainant and drove a car like hers.

4. A more specific accounting by Detective Carolyn Stephenson found bloodstains on a "man's 'large' blue jean jacket" and on "one pair of men's levis." They and other clothing found in the cab were admitted in evidence.

Freeway toward Loop 610 in Houston. Shortly after midnight she noticed a truck trying to push her car off the road as she approached an overpass. On the overpass appellant hit her car with his truck and she stopped. He got out of his truck and according to D— H— was "yelling something about my tires going flat and I rolled down my window to look and he was standing there with a gun at my head. * * * He then said, 'You are coming with me' and he grabbed my hair and started pulling me out of the car through the open window and started to beat me over the head with the pistol."

D— H— got out of the car and appellant dragged her toward his truck as she struggled; she got away, but he grabbed her again and hit her head repeatedly with the pistol. She sustained several lacerations with considerable bleeding. According to D— H—,

"[H]e demanded money, and my purse was still in my car . . . , and he dragged me back to my car and took the money I had . . . and then he said, 'Okay, I am going to leave and kill you'."

Also while back at her car appellant instructed her to remove her pants and panties, which she did. Appellant said "You are not going to run away like that," and again struggled with and hit D— H— with the pistol until he forced her into the back of his truck. Appellant then got into his truck, and was pulling away, when D— H— jumped out, ran to her car, got in and started the engine.

Appellant at this point started shooting at D— H—. She sustained three gun shot wounds, and a fourth slug was later recovered by the police from a bullet hole found inside the back seat of her car.[5]

It was only on cross examination by defense counsel that a possible attempted rape of D— H— was mentioned. While D— H— answered affirmatively when asked, "Did he attempt to rape you?," on being asked to explain "what exactly did he do as far as the attempted rape goes?," she replied, "He removed my jeans and panties, and I don't remember exactly what he did; he stuck something up me, but I don't know what."[6] Thus, whether D— H—'s testimony demonstrated an attempted rape upon her is questionable.

It is an established proposition of evidence that proof of similar happenings, extraneous transactions or prior specific acts of misconduct committed by a party is irrelevant to the contested material issues in the case on trial and therefore inadmissible.[7]

In a criminal proceeding, when the extraneous or similar transaction committed by an accused, sought to be admitted by the State, constitutes a criminal offense, introduction of that "extraneous offense" transaction is inherently prejudicial because the accused is entitled to be tried on the accusation made in the State's charging instrument and therefore cannot be tried for some collateral crime of which he has no notice. *Murphy,* supra; *Jones v. State,* 568 S.W.2d 847 (Tex.Cr.App.1978); *Walls v. State,* 548 S.W.2d 38 (Tex.Cr.App.1977); *Young v. State,* 261 S.W.2d 836 (Tex.Cr. App.1953); *Couch v. State,* 238 S.W.2d 198

---

**5.** This testimony, together with that of the primary complainant regarding appellant's firing a single shot in the road behind her, explained Officer Allsup's testimony that he had found five spent rounds in appellant's pistol, and surely rebutted appellant's claim that he had not used a pistol during the transaction.

**6.** Apparently in an effort to impeach her, defense counsel brought out that in prior testimony D— H— had not related that appellant "sexually molested" her. D— H— explained that she had thought the question had meant "sexual intercourse," which she confirmed had not occurred.

**7.** *Murphy v. State,* 587 S.W.2d 718 (Tex.Cr. App.1979); *Finley v. State,* 573 S.W.2d 238 (Tex.Cr.App.1978); *Grayson v. State,* 481 S.W.2d 859 (Tex.Cr.App.1972); *Johnson v. State,* 418 S.W.2d 522 (Tex.Cr.App.1967); *Flores v. State,* 209 S.W.2d 68 (Tex.Cr.App. 1948); *Stone v. State,* 182 S.W.2d 400 (Tex.Cr. App.1944); *Locke v. State,* 88 S.W.2d 110 (Tex. Cr.App.1936); *Dallas Ry. and Terminal Co. v. Farnsworth,* 227 S.W.2d 1017 (Tex.1950); *Swinney v. Winters,* 532 S.W.2d 396 (Tex.Cr. App.–San Antonio, 1975, writ ref'd n. r. e.); *Davis v. Zapata Petroleum Co.,* 351 S.W.2d 916 (Tex.Civ.App.–El Paso, 1961, writ ref'd n. r. e.).

(Tex.Cr.App.1951). Additionally, such introduction is inherently prejudicial because an accused's "propensity to commit crimes" is not an issue which is material to whether he is guilty of the specified conduct charged by the State;[8] it follows therefore, that introduction of evidence establishing such a propensity constitutes a trial of the accused as a "criminal generally" which is prohibited. E. g., *Murphy*, supra; *Young*, supra; *Couch*, supra; *Clements v. State*, 182 S.W.2d 915 (Tex.Cr.App.1944); see *Spivey v. State*, 171 S.W.2d 140 (Tex.Cr.App.1943). See also *Jones*, supra; *Etchiesen v. State*, 574 S.W.2d 753 (Tex.Cr.App.1978); *Cameron v. State*, 530 S.W.2d 841 (Tex.Cr.App. 1975); *Albrecht v. State*, 486 S.W.2d 97 (Tex.Cr.App.1972).

But, these evidentiary principles, as most, must in some circumstances give way. For extraneous transactions constituting offenses shown to have been committed by the accused[9] may become admissible upon a showing by the prosecution both that the transaction is *relevant* to a *material* issue in the case;[10] and, the relevancy value of the evidence outweighs its inflammatory or prejudicial potential. *Holley v. State*, 582 S.W.2d 115 (Tex.Cr.App.1979); *Ruiz v. State*, 579 S.W.2d 206 (Tex.Cr.App.1979); *Jones*, supra.

In determining this evidentiary balance in a case established by direct evidence,[11] the court must consider whether the material issue to which the extraneous conduct is relevant is *contested*, and, if so, in looking to the attributes of the extraneous offense as shown by the State, determine whether its admission would be of *assistance to the jury* in resolving the contested issue[12] before it.

So, the issue we confront on appeal is whether the conduct of appellant constituting force and threats against D___ H___, tended to rebut appellant's contesting claim on the material issue before the jury: that he had employed no threats or force against the primary complainant. Clearly, the facts of the extraneous offense were highly probative of the issue. While I believe the trial court erred by admitting evidence of the extraneous offense in the State's case in chief, since at that point the issue was uncontested, it is clear that the evidence was ultimately rendered admissible in rebuttal when appellant contested the complainant's direct testimony regarding his use of force and threats against her. See, e. g., *Lee v. State*, 496 S.W.2d 616 (Tex.Cr. App.1973); *Johnson v. State*, 494 S.W.2d 870 (Tex.Cr.App.1973); *Gilmore v. State*, 493 S.W.2d 163 (Tex.Cr.App.1973).

For the reasons expressed, I respectfully concur in the result reached by the majority, as well as the demise, as an unyielding and inviolate proposition, of the rule in *Jackel*.

---

8. Or restated in a manner familiar to law students: "A bad man may have a righteous cause;" or apropos in the instant case: "The fact that one woman was raped has no tendency to prove that another one did not consent."

9. It is always required that the commission of the extraneous offense is clearly proved and the accused is shown to have been its perpetrator. *Carrillo v. State*, 591 S.W.2d 876 (Tex.Cr. App.1979); *Ranson v. State*, 503 S.W.2d 810 (Tex.Cr.App.1974); see also 23 T.J.2d *Evidence* § 195 (1961).

10. *Coleman v. State*, 577 S.W.2d 695 (Tex.Cr. App.1978); *Buckner v. State*, 571 S.W.2d 519 (Tex.Cr.App.1978); *Finley*, supra; *Walls*, supra; *Halliburton v. State*, 528 S.W.2d 216 (Tex. Cr.App.1975).

11. For assistance on the question in circumstantial evidence cases, see *Etchiesen*, supra; *Mulchey v. State*, 574 S.W.2d 112 (Tex.Cr.App. 1978); and *Jones*, supra.

12. For example, when the contested jury issue is the "identity" of the perpetrator, generally, only a showing of distinguishing characteristics, common to both the primary and extraneous offenses, will render the latter of any probative value to the jury on the issue of identity. See, e. g., *Collins v. State*, 577 S.W.2d 236 (Tex.Cr.App.1979); *Buckner*, supra; *Ransom*, supra; *Ford v. State*, 484 S.W.2d 727 (Tex.Cr. App.1972).