**Edward Glen BYARS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 04–83–00422–CR.**

Court of Appeals of Texas,
San Antonio.

April 24, 1985.

Peter A. Sakai, San Antonio, for appellant.

Sam Millsap, Jr., Charles Estee, Dist. Atty.'s Office, San Antonio, for appellee.

Before ESQUIVEL, CANTU and DIAL, JJ.

## OPINION

ESQUIVEL, Justice.

This is an appeal from a judgment of conviction in a sexual abuse case.[1]

Appellant was charged by indictment with the offense of sexual abuse. The jury found appellant guilty of the offense charged, and the trial court assessed his punishment at nine (9) years' confinement in the Texas Department of Corrections. Appellant's motion for new trial was overruled by operation of law. He timely filed his notice of appeal. We affirm.

We will address appellant's three grounds of error not in the order submitted but under the particular categories therein set out, i.e.: (1) Jury Deliberation; (2) Extraneous Offense; and (3) Effective Assistance of Counsel.

---

1. Appellant was charged and convicted under TEX. PENAL CODE ANN. § 21.04, which was repealed by Act of June 19, 1983, ch. 977, § 12, 1983 Tex.Gen. Laws 5311, 5321. *See* now TEX. PENAL CODE ANN. § 22.011 (Vernon Supp. 1985).

## JURY DELIBERATION

In his ground of error number two, appellant alleges that the trial court erred "in failing to grant a mistrial *sua sponte* based in fact upon the length of jury deliberation."

The record reflects that appellant objected to the submission of an *Allen* [2] charge to the jury but failed to request a mistrial and a ruling of the court thereon. Counsel's failure to so move for a mistrial will be addressed in our later discussion concerning effective assistance of counsel.

Appellant's complaint under this particular ground of error is not directed to the contents of the *Allen* instruction but instead is directed to the amount of time spent in deliberation by the jury prior to and after the instruction. Appellant contends that the amount of time spent in deliberation mandated a discharge of the jury *sua sponte* by the court rather than an instruction to deliberate further. We disagree with appellant.

A review of the record reveals that after the jury had deliberated for almost five hours, excluding a break for lunch, the jury sent a note to the trial judge, signed by the foreman, which said that they were unable to arrive at a unanimous decision. The jury returned to the courtroom and the following colloquy took place:

THE COURT: Will the Foreman raise your hand? Have you been able to reach a unanimous verdict?

THE FOREMAN: No, we have not.

THE COURT: Are you going to be able to reach a unanimous verdict?

THE FOREMAN: We tried several times and are unable to do it.

The court then read the *Allen* charge and sent the jury back to the jury room for further deliberation. Two hours later the jury sent the following note to the trial judge, signed by the foreman: "After 7 hours this jury is unable to reach a unanimous decision—no further deliberation will change the outcome—(deadlock)." When informed of the note by the court, out of the presence of the jury, appellant's attorney urged the court to *sua sponte* declare a mistrial because appellant was not going to make such a motion. Appellant's attorney, however, advised the court that "[w]e would like to arrive at some conclusion today one way or the other." The court regarded this as a desire on appellant's part to keep the jury deliberating and had the jury brought into the courtroom. The trial judge read the jury's note to the foreman and proceeded to tell the jury about dinner arrangements. He then ordered every one except the jury out of the courtroom. After a short period of time the judge and the parties returned to the courtroom and the judge received two notes, the first of which was signed by the foreman and read: "It has been stated that no matter how long it takes these minds will not be changed." In response to this note the judge advised the jury that he was going to keep them deliberating and would keep making some arrangements. The second note which was unsigned was then received by the judge. It read: "Does 'other' arrangements mean we might or *will* have over-night arrangements? If there will be over-night arrangements I will need to make a couple of phone calls." The trial judge assured the jurors that he had "not decided that point yet" and sent the jury back to the jury room to deliberate until 7:30 P.M. at which time they would go to dinner. The record is silent as to whether the jury did go to dinner. In any event, almost three and one-half hours later, at 10:30 P.M., the jury sent in a note, signed by the foreman, that they had come to a complete agreement. The jury was brought back to the courtroom and announced that they found appellant guilty as charged. The jurors were polled by the court asking each one if that was their verdict. There is no record of any juror answering in the negative.

■ The rule is well settled that the length of time a jury deliberates is largely discretionary with the trial court and absent a showing of abuse of discretion there

**2.** *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

is no reversible error. *Rodela v. State,* 666 S.W.2d 652, 653 (Tex.App.—Corpus Christi 1984, pet. ref'd); TEX.CODE CRIM.PROC. ANN. art. 36.31 (Vernon 1981). In this case the jury deliberated five hours prior to the submission of the *Allen* charge and five and one-half hours after the submission of the *Allen* charge before reaching a verdict. It is noted that the testimony in this case took one full day. Given the nature of the case and the amount of testimony adduced during trial we cannot say that the court abused its discretion in requiring the jury to deliberate ten and one-half hours. *Cf. Johnson v. State,* 630 S.W.2d 291, 294 (Tex.App.—Dallas 1981), *pet. ref'd per curiam,* 629 S.W.2d 953 (Tex. Crim.App.1982). Appellant's ground of error number two is overruled.

### EXTRANEOUS OFFENSE

Appellant contends that the trial court erroneously permitted the State to elicit from its rebuttal witness testimony of an extraneous offense for which appellant had not been charged or convicted.

We find it unnecessary to recite the sordid facts. It is sufficient to state that appellant's testimony admitting that he placed his genitals in contact with the mouth of the prosecutrix, that he did so with her consent and without resistance on her part, and that he used no force or threats, directly contradicted the testimony previously given by the prosecutrix. Appellant clearly raised the defensive theory of consent.

■ In order to be convicted of the now repealed offense of sexual abuse, appellant must have engaged in conduct intentionally and knowingly without the prosecutrix's consent. It is the lack of consent on the part of the prosecutrix that was the gravamen of the offense of sexual abuse. When the defensive theory of consent is raised, a defendant necessarily disputes his intent to do the act without the consent of the prosecutrix. His intent is thereby placed in issue and such intent cannot be inferred from the mere sexual act with the prosecutrix. The State may then offer ex-

traneous offenses which are relevant to that contested issue. *See Rubio v. State,* 607 S.W.2d 498, 501 (Tex.Crim.App.1980).

The testimony of the witness Tabor concerning deviate sexual acts committed upon her by appellant by force and without her consent in the same city, in the same manner and approximately three months prior to the time of the offense charged in the instant case was relevant to whether appellant intended to perform the sexual acts upon the prosecutrix in the instant case. Accordingly, appellant's ground of error number three is overruled.

### EFFECTIVE ASSISTANCE OF COUNSEL

■ Appellant raises the issue of effective assistance of counsel. The right to assistance of counsel is guaranteed by the sixth amendment to the United States Constitution and is made mandatory on the states by the fourteenth amendment. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). The determination of whether trial counsel's assistance was effective is made under the "reasonably effective assistance" standard. *Ex parte Duffy,* 607 S.W.2d 507, 516 (Tex. Crim.App.1980). The performance of trial counsel is evaluated from the totality of the representation. *Archie v. State,* 615 S.W.2d 762, 765 (Tex.Crim.App.1981).

■ To determine whether an accused has been denied "reasonably effective assistance of counsel" we must consider the particular circumstances of each individual case. *Mercado v. State,* 615 S.W.2d 225, 227 (Tex.Crim.App.1981). Counsel's performance is evaluated from the totality of the representation. *Archie,* 615 S.W.2d at 765. Lastly, we may not judge a counsel's competency by hindsight. *Howell v. State,* 563 S.W.2d 933, 937 (Tex.Crim.App.1978). The United States Supreme Court now mandates that an appellant show "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* — U.S. —,

———, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984).

■ Appellant asserts the trial counsel failed to move to strike certain exhibits admitted without objection during the testimony of San Antonio police officer Daniel Barrera, a witness for the State. These exhibits were a pair of trousers and the contents from the pockets thereof which had been testified to by officer Barrera as having been turned over to him by the prosecutrix shortly after the offense in question as belonging to appellant. Appellant contends that because the prosecutrix, upon cross-examination, admitted she was not then sure that the trousers belonged to appellant or who they belonged to, that the prosecutrix could not provide the nexus of admissibility of these exhibits. We disagree with appellant.

The exhibits were identified by officer Barrera because of the markings he had placed on each exhibit, i.e., his initials D.R.B. and his badge number, 141, after they were turned over to him by the prosecutrix and before he placed them in the police property room. We can find no error in admitting the exhibits into evidence even if there had been an objection. The mere fact the prosecutrix could in no way identify them as belonging to appellant at the time of trial would go to the weight to be given her testimony and not to the admissibility of the exhibits. A motion to strike would, in our opinion, have been to no avail, and no error in appellant's counsel's failure to so move has been shown.

■ Appellant asserts the trial counsel failed to object to the admission of pictures of the prosecutrix depicting her injuries. He contends that because the witness, officer Barrera, had testified that he did not see any injuries suffered by the prosecutrix during his investigation, the absence of cross-examination of the prosecutrix in regards to this contradiction of evidence, the absence of voir dire examination of the prosecutrix to determine the admissibility of the pictures and the absence of any argument to the jury in regards to the contradiction in the evidence, was a failure on the part of his trial counsel to present any strategy in answer to the State's attempt to prove the criminal element of lack of consent of the prosecutrix by the use of force. Appellant presents a complaint as to the strategy or lack thereof used by trial counsel but does not state why the photographs were inadmissible. The prosecutrix testified that the photographs of the bruises and scratches fairly and accurately depicted the way she appeared on August 7, 1982, after she was attacked by appellant. The photos were admissible. *See Brasfield v. State,* 600 S.W.2d 288, 297 (Tex.Crim. App.1980). During closing argument the strategy of trial counsel in not objecting to the admission of the photos is clearly revealed, i.e.:

> The State admits that she was not beat [sic] up. They have some photographs that show something.... I wanted the jury to look at the photographs and look at whatever they are worth. I want you to look at them and see if that looks like a person who has been abused.

We cannot find any error has been shown.

Appellant asserts that the record is replete with instances where inadmissible hearsay and speculative responses were allowed in evidence without objection and the jury was allowed to hear same. Appellant, however, refers us to only one particular instance in the record. We will concern ourselves with only that particular instance.

■ The incident involves the testimony of the State's witness, Deborah McMahon. She testified that five days after the date of the offense she recognized appellant in a bar and called the police. She then testified as to what conversation took place between her and the police and the police and appellant. All of these conversations occurred in the presence of appellant. We find no inadmissible hearsay. The speculative response by the witness Deborah McMahon that the police obviously knew appellant can in no way be construed as harmful or prejudicial to appellant's case. The speculative response concerning appel-

lant's wallet by the witness, Deborah McMahon, that appellant was "trying to make out as though she ripped it off from him or stole it from him," is consistent with the testimony of appellant that the prosecutrix consented and then stole his pants and wallet. The speculative response concerning the existence of a warrant for appellant's arrest by the witness McMahon that the police "were trying to find out if he had a warrant for his arrest" cannot be construed as harmful to appellant's case, particularly when the witness followed up the phrase with "which he didn't, and they let him walk out of there." Appellant fails to state why the testimony should have been excluded or how he was prejudiced. We find no error.

▆ Appellant asserts that the record is full of instances where irrelevant and unquestionably prejudicial testimony was admitted without objection and the jury allowed to hear harmful inadmissible testimony and refers us to the line of questioning of the witness McMahon, and of the prosecutrix concerning the prosecutrix's musical talents, the prosecutrix's plans to leave town and go to Alaska and get married and how long it took the prosecutrix to get over the situation. Appellant fails to point out why the evidence should have been excluded or how he was prejudiced by its admission. We note that trial counsel referred to the testimony of the upcoming marriage of the prosecutrix and her decision to leave town in his argument to the jury and deduced therefrom why she would not claim she did not consent. The testimony concerning the prosecutrix's musical talents was relevant in that it related to the reason the prosecutrix invited appellant to her apartment.

▆ Appellant asserts that there are in the record instances where the State was permitted to bolster its witnesses and eventually was permitted to ask excessively prejudicial leading and repetitive questions, without objection. Appellant specifically refers us to questions asked of the witness Deborah McMahon on direct examination by the State. We have reviewed these questions and find repetition but no bolstering; the prosecutor was merely wrapping up or summarizing the direct testimony of the witness and her adherence to the oath she took as a witness to tell the truth. The voluntariness of prosecutrix's testimony had been alluded to by trial counsel in his cross-examination and the State was within its right to, on redirect, elicit from the witness that she was not rehearsed by the State prior to giving her testimony.

Appellant asserts the trial counsel failed to seek the exclusion of evidence of appellant's prior criminal record. Appellant admits that the line of questioning by the prosecutor was eventually objected to and sustained by the court but trial counsel failed to move to strike the testimony, failed to request that the jury disregard same and failed to move for mistrial. Appellant's prior criminal record, i.e., "probation for D.W.I.," was elicited from him during cross-examination by the prosecutor. Appellant testified on re-direct that for a period of five months after the date of the offense there was no warrant out for his arrest relating to the offense and he based this on the fact that he had "reported once a month" and was not arrested until the fifth month. On cross-examination, the prosecutor inquired: "You stated earlier you were reporting once a month," and appellant answered: "Probation for a D.W.I." and upon further questioning by the prosecutor, appellant testified that he had been on probation for D.W.I. for two years. This line of questioning by the prosecutor was invited by appellant and we can attach no impropriety to it or any attempt to inflame the minds of the jury.

Appellant asserts that the trial counsel failed to preserve by bill of exceptions his motion for mistrial based upon jury misconduct. Trial counsel moved for a mistrial because he had been advised that the jurors had been seen talking to the prosecutrix who was sitting amongst them outside the courtroom during a recess. The prosecutor convinced the court that it was not the prosecutrix because she was in his office at the time. The jury was returned to

**54**

the courtroom and the trial proceeded. There is nothing in the record that any person was conversing with the jury while in recess. We see no need for a bill of exception.

Appellant asserts that trial counsel failed to file pre-trial motions, failed to file subpoenas for witnesses, failed to file post-trial motions or bill of exceptions, failed to invoke the rule and failed to present any strategy in the voir dire examination of the jury panel. No suggestion is made by appellant as to what pre-trial motions, subpoenas for witnesses, post-trial motions and bill of exceptions should have been filed or how such action would have effected the outcome of the trial. Nothing in the record indicates a need to file pre-trial motions or subpoenas. It is well established the trial counsel's failure to call witnesses is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony. *King v. State*, 649 S.W.2d 42, 44 (Tex.Crim.App. 1983). We find that the rule was invoked by the court. The court stated "We are placing all the witnesses under the rule...." In any event, whether or not the rule was invoked by any of the parties has not been shown to have been harmful; there is nothing in the record which reflects that any witness discussed the case or their testimony with any person other than the lawyers in the case. In regard to appellant's assertion the trial counsel did not present a strategy during the voir dire examination of the jury we agree with appellant that no strategy was presented. Appellant, however, does not point out how this was harmful to the ultimate outcome of his case. The State correctly points out that trial counsel did make general remarks and conducted individual voir dire. Also, the State assumes the trial counsel may have elected not to show his hand until after the State had presented its case. We agree with the State. Trial counsel's failure to set out any strategy appears to have been a strategical move. Appellant's failure to set out what strategy trial counsel should have presented to the jury panel puts us in a position of second-guessing the representation appellant received from his trial counsel. This we will not do.

Appellant has failed to sustain his burden of demonstrating ineffective assistance of counsel. The record establishes the trial counsel provided reasonably effective assistance of counsel. He took an active part in the selection of the jury; he vigorously and thoroughly cross-examined all the witnesses for the State; he presented the defensive theory of consent; and presented a clear and forceful summation during closing argument. He made several objections and motions during trial.

After viewing the entire record we cannot conclude that appellant was denied effective assistance of counsel.

Having overruled all of appellant's grounds of error, we affirm the judgment of the trial court.